[No. D015106. Fourth Dist., Div. One. Aug. 20, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY LEE HENDRIX, Defendant and Appellant.

COUNSEL

Charles F. Cambell, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle B. Davis and David I. Friedenberg, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, Acting P. J.**—A jury found the defendant, Henry Lee Hendrix, guilty of simple assault (Pen. Code,[1] § 240), a lesser included offense of assault with intent to commit rape (§ 220), and felony false imprisonment by violence (§§ 236/237). The court found Hendrix had been convicted of two serious felonies within the meaning of section 667, subdivision (a) and sentenced him to the lower term of sixteen months for his conviction of false imprisonment with a one-year ⌣onsecutive term for each prison prior, for a total of three years and four months. The court stayed its six-month sentence on the simple assault conviction pursuant to section 654. We conclude that Hendrix's contention that his conviction of felony false imprisonment must

---

[1]All statutory references are to the Penal Code.

be reversed because the trial court erred in failing to give a requested instruction on the lesser included offense of misdemeanor false imprisonment has merit. We therefore reverse the judgment on that count.[2] In all other respects we affirm the judgment. We remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 8:30 to 9 p.m. 23-year-old Bethany M. was walking to a friend's house when she saw Hendrix standing in the driveway in front of his house. She knew Hendrix, having seen him around the neighborhood for about six years. Hendrix was about 29 years old. Bethany did not have a dating relationship with him.

Bethany asked Hendrix if she could use the bathroom in his house. Hendrix invited her in and they walked upstairs together. After using the bathroom Bethany saw Hendrix sitting on the edge of his bed playing Nintendo. Hendrix asked her if she wanted to play. She sat down on the bed and joined him in playing the game.

Fifteen to twenty minutes later Hendrix said he did not want his nieces or nephews bothering him and closed the bedroom door. The door's lock was broken and to secure the door Hendrix pushed a couch against it. Hendrix asked Bethany if she wanted to smoke a "joint." She replied she did and Hendrix rolled a joint for her. She smoked most of it.

After a period of about 45 minutes or so, Bethany got up and said she had to leave. As she started toward the door, the light was turned off and Hendrix grabbed her from behind. Hendrix's hand was on the front of her neck. He pushed her on to the bed and started to choke her. He said she was not going to leave after smoking his marijuana. Hendrix's upper body pinned her down. He used his knee in an effort to force her legs apart.

Bethany heard someone coming up the stairs and screamed for help. The person outside yelled at Hendrix to open the door. Bethany ran toward the

---

[2]In light of our decision it is unnecessary for us to address Hendrix's additional argument that the court abused its discretion when it failed to consider whether to strike one or both prison priors for purposes of sentencing. As an editorial comment, although the record is ambiguous, we think it shows the court was aware of its discretion in this regard. In any event provided Hendrix is retried and again convicted of felony false imprisonment the trial court will have the further opportunity to exercise its discretion at sentencing and strike one or both of the priors. (See e.g., *People* v. *Ruby* (1988) 204 Cal.App.3d 462, 465 [251 Cal.Rptr. 339].) Presumably, at that time the court will clearly articulate its awareness of its discretion so that the sentencing issue presented in this appeal can be avoided.

door which was pushed open by Hendrix's sister. Bethany told her Hendrix had tried to rape her. Bethany also told her aunt about the incident and then reported it to the police. Although Bethany did not see a doctor she suffered a sore throat from the attack and had some scratches on her neck.

Dr. Russell Bruce Hubbard, a psychiatrist with expertise on the effects of drugs, testified for the defense. He explained marijuana could produce anxiety attacks or paranoid episodes as well as producing perceptual distortions and visual hallucinations. Use of marijuana could also adversely affect long term memory by interfering with the transfer of information from short term to long term memory. Given a hypothetical situation similar to the defense theory of what occurred in the bedroom, Dr. Hubbard testified it was possible the marijuana Bethany smoked could have affected her memory of the incident and could have led to panic or a paranoid episode.

The door to Hendrix's bedroom could be pushed partially open from the outside when the couch was pushed against it. Although it could not be completely opened it could be opened enough so that someone could get through the door.

Cleo Rambus testified he was at Hendrix's house between 8:30 and 10 p.m. Hendrix came out of the house and asked him if he could give a lady a ride home. Rambus said he could not do so. Hendrix returned home. A few minutes later a woman came out of the house. Rambus did not notice anything unusual about her.

On rebuttal Officer Jeanmarie Frary testified she interviewed Bethany at approximately 10:35 p.m. on the date the incident occurred. Officer Frary had training and experience in recognizing people under the influence of drugs or alcohol. She was also familiar with the symptoms of persons under the influence of marijuana. When she spoke with Bethany, Bethany displayed no symptoms of recent alcohol or marijuana consumption.

## DISCUSSION

■ Hendrix argues the court committed reversible error when it rejected defense counsel's request to give an instruction on misdemeanor false imprisonment, a lesser included offense of felony false imprisonment.

Section 236 defines false imprisonment as "the unlawful violation of the personal liberty of another." Section 237 provides that punishment for false imprisonment may either be a fine not exceeding $1,000 or by imprisonment in the county jail for not more than one year or both, except where "such

false imprisonment [is] effected by violence, menace, fraud, or deceit . . . ." In such circumstances, false imprisonment is a felony and is "punishable by imprisonment in the state prison." (§ 237.)

Here, the court instructed solely on false imprisonment by violence or menace pursuant to CALJIC No. 9.60:

"Every person who by violence or menace violates the liberty of another person by intentionally and unlawfully restraining, confining, or detaining such other person and compelling such person to stay or go somewhere without his consent is guilty of the crime of false imprisonment by violence or menace, in violation of . . . sections 236 and 237.

"In order to prove such crime, each of the following elements must be proved: a person intentionally and unlawfully violated the liberty of another person by restraining, confining, or detaining that person and compelling him or her to stay or go somewhere without his or her consent; and, two, such act was done by violence or menace.

"Violence means the exercise of physical force used to restrain over and above the force necessary to effect such restraint.

"Menace means a threat of harm express or implied by work or act."

When asked to give CALJIC No. 16.135,[3] misdemeanor false imprisonment, the court said:

"The only basis for false imprisonment that I can see is that he knocked her down and got on top of her, which made it difficult for her to leave. And that surely involves force. So I don't—I think the [lesser included offense] would be confusing and unsupported by the evidence. It's refused."

The flaw in the court's reasoning as seen by the foregoing instructions is the court's belief that force was solely an element of felony false imprisonment. Force is an element of both felony and misdemeanor false imprisonment. Misdemeanor false imprisonment becomes a felony only where the force used is greater than that reasonably necessary to effect the restraint. In such circumstances the force is defined as "violence" with the false imprisonment effected by such violence a felony. Thus the court here erred in rejecting the proffered instruction on the ground Hendrix used force.

---

[3]CALJIC No. 16.135, false imprisonment, provides:
"Every person who falsely imprisons another is guilty of violating Penal Code section 236, a misdemeanor.
"False imprisonment is the [unlawful] violation of the personal liberty of another. False imprisonment means there must be an intentional [and unlawful] restraint, confinement or detention which compels a person to stay or go somewhere against [his] [her] will. . . ."

The omission of the instruction in this case is particularly significant since the jury rejected the prosecution's explanation of Hendrix's behavior convicting him only of simple assault. In reaching this decision the jury seems to have accepted the defense argument that the events could not have occurred the way they were described by Bethany. Defense counsel pointed out that Hendrix was 6'2", 220 pounds and Bethany only 5'2", 110 pounds. Because of Hendrix's clearly overpowering strength, counsel argued, it was absurd to think that Hendrix could not have raped Bethany had he wanted to do so. The physical evidence also failed to fully corroborate her testimony since she did not have the bruises or marks usually seen where the perpetrator intends to commit rape. Moreover, Hendrix's bedroom did not look as if a scuffle had occurred there. Consistent with Hendrix's portrayal of the events there was ample evidence for the jury to believe that although Hendrix used force, he did not use anything other that the amount of force necessary to prevent Bethany from leaving his bedroom. Accordingly, because the legal basis for the court's refusal to give the requested instruction was erroneous and because there was ample evidence to warrant the giving of the instruction, the court prejudicially erred in failing to do so.

## DISPOSITION

The conviction of felony false imprisonment is reversed. The balance of the judgment of conviction and true findings is affirmed. The case is remanded for further proceedings consistent with this opinion.

Work, J., and Froehlich, J., concurred.