[No. B182028. Second Dist., Div. Four. Mar. 30, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
RODOLFO CASTRO, Defendant and Appellant.

**COUNSEL**

Law Office of Bruce M. Margolin, Peter A. Vance and Bruce M. Margolin for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Ana R. Duarte and Stacy S. Schwartz, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HASTINGS, J.**[*]—Defendant Rodolfo Castro was convicted of felony false imprisonment (Pen. Code, § 236)[1] as well as child molestation (§ 647.6, subd. (a)). He appeals his conviction for felony false imprisonment on the ground that there was insufficient evidence at trial to support the conviction. In the alternative, he contends the trial court erred in failing to instruct, sua

---

[*]Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further references are to the Penal Code unless otherwise indicated.

sponte, on the lesser included offense of misdemeanor false imprisonment. We agree the court erred in failing to provide an instruction on misdemeanor false imprisonment, a point conceded by respondent, and we cannot conclude the error was harmless. Accordingly, we reverse and remand.

## FACTS

During the week of October 13, 2003, around 6:50 a.m., then 16-year-old Diana N. was walking to a bus stop on her way to high school. She noticed that a white van was being driven slowly near her. The driver, whom Diana identified in court as appellant, called out to her, "Hey, hey," but Diana ignored him.

On October 21, as Diana was walking to her bus stop, appellant slowly drove by in a burgundy car. He kept asking Diana, "Hey, hey, do you want a ride? Do you want a ride?" Diana tried to ignore appellant, but eventually turned around and said, "No, no." She then heard appellant say, "I'll give you $10 if you let me lick your thing." Very upset, Diana replied, "How could you say that? You're a dirty man." She kept walking, but then her arm was grabbed and she was pulled toward appellant.

Appellant was originally charged in count 1 with kidnapping (§ 207, subd. (a)). At the end of the preliminary hearing the prosecutor moved to amend the complaint to conform to proof to allege the charge of attempted kidnapping (§§ 207, subd. (a), 664) in count 1. That was the charge alleged in count 1 of the information filed shortly thereafter.

Prior to submission of the case to the jury, the trial court agreed to provide requested instructions on what it termed the "lesser included" offenses of felony false imprisonment, assault and battery. The jury found appellant not guilty of attempted kidnapping but found him guilty of each of the lesser offenses. The court struck the convictions for assault and battery in lieu of appellant's conviction for felony false imprisonment.

Further facts will be presented in the discussion.

## DISCUSSION

### 1. *Substantial Evidence*

Appellant effectively admits there is sufficient evidence to establish that he was guilty of false imprisonment, but argues the evidence is insufficient to

establish that he used more force than reasonably necessary to restrain the victim to elevate the crime of false imprisonment from a misdemeanor to a felony.

Section 237, subdivision (a), provides as follows: "False imprisonment is punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail for not more than one year, or by both that fine and imprisonment. [Misdemeanor false imprisonment.] If the false imprisonment be effected by violence, menace, fraud, or deceit, it shall be punishable by imprisonment in the state prison. [Felony false imprisonment.]"

■ "Force is an element of both felony and misdemeanor false imprisonment. Misdemeanor false imprisonment becomes a felony only where the force used is greater than that reasonably necessary to effect the restraint. In such circumstances the force is defined as 'violence' with the false imprisonment effected by such violence a felony." (*People v. Hendrix* (1992) 8 Cal.App.4th 1458, 1462 [10 Cal.Rptr.2d 922].)

"When a jury's verdict is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, which will support it, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the jury. It is of no consequence that the jury believing other evidence, or drawing different inferences, might have reached a contrary conclusion." (*People v. Brown* (1984) 150 Cal.App.3d 968, 970 [198 Cal.Rptr. 260].) We turn to a review of the evidence on the issue.

Diana testified about the encounter as follows:

"Q. So what did you do?

"A. I kept on walking. And when I came crossing through here, that's when I heard him say, 'Hey, hey, do you want a ride? Do you want a ride?'

"Q. Then what happened?

"A. I remember turning around and said, 'No, no,' and kept on ignoring him and trying to walk. And I heard him tell me, 'I'll give you $10 if you let me lick your thing.'

"Q. How did you feel when the defendant said this to you?

"A. I was really upset.

"Q. Why was that?

"A. Because I didn't want him to talk to me that way.

"Q. And what did you do?

"A. I turned around and told him in Spanish, 'How could you say that? You're a dirty man.'

"Q. And then what did you do?

"A. I kept on walking. And that's when I felt something on my hand, on my forearm. [¶] . . . [¶]

"Q. Now, what grabbed your arm?

"A. I felt an arm grab me and holding me around.

"Q. And which direction were you facing when you felt the person grab you?

"A. I was facing forward first, because I was walking.

"Q. And after the defendant grabbed you, what happened at that point?

"A. He turned me. *And then he, like, gave me like a little tug, like a pull toward him.* And I guess I was, like, looking at my hand. It was something in the matter of seconds. I just looked at my hand briefly, and I pulled away.

"Q. Now, when you say he turned you, *was that back towards the direction of his car?*

"A. Yes.

"Q. Were you turning—you're facing one direction. *Did you turn all the way so that you were facing in the opposite direction?*

"A. Yes.

"Q. *And were you moved at all towards the direction of the defendant's car?*

"A. I took a couple of steps, *because he did pull me.*

"Q. And once you were pulled in the direction of the car, what was your direction?

"A. I pulled away fast.

"Q. And what did you do then?

"A. I started running." (Italics added.)

Appellant relies upon the case of *People v. Matian* (1995) 35 Cal.App.4th 480 [41 Cal.Rptr.2d 459], to support his argument that his conviction should have been no more than misdemeanor false imprisonment. There, the defendant was convicted of three crimes: sexual battery by restraint, felony false imprisonment, and genital penetration with a foreign object. In the published portion of the opinion the Court of Appeal discussed only the conviction for felony false imprisonment, and it concluded the evidence was insufficient to support the conviction. It reduced the conviction to misdemeanor false imprisonment. Because the opinion was only partially published, it did not address all of the facts underlying each of the crimes apparently leading up to the false imprisonment. It summarized as follows: "The evidence supporting the conviction for felony false imprisonment consists of the just completed sexual assaults during which appellant squeezed Olga E.'s breast sufficiently hard to cause her pain, and possibly even bruising. She testified after the ordeal she had her husband take photos of her breast but the photos did not turn out. After the assaults she prepared to go by gathering up her bookbag. Appellant then grabbed her arm and yelled at her not to go. He yelled at her, 'nothing happened' and told her to go wash her face. She then retreated to a chair and appellant went into an office nearby within view of Olga E. Each time she got up from her chair, appellant glared at her and got up out of his chair to approach her. She testified she was afraid, did not want him to touch her again and sat back down." (*Id.* at p. 485.) The court then discussed various cases addressing false imprisonment by menace. After reviewing the cases, it concluded as follows:

"The facts in the case at bar do not support a finding the false imprisonment was effected by menace. The only evidence of 'menace' or 'implied threat of harm' in this case would have to be based on appellant's earlier sexual assaults causing pain and possible injury and later glaring at her while getting out of his chair and approaching her each time she tried to leave. Based on the foregoing authorities however, this evidence is inadequate to establish an express or implied threat of harm. There was no evidence of a deadly weapon. Nor is there anything in the record to indicate the defendant

ever verbally threatened Olga E. with additional physical harm. Similarly, there was no evidence to suggest appellant raised his fist or otherwise made any threatening movements suggesting harm each time Olga E. got out of the chair to leave.

"Based on the lack of evidence of either violence or menace in restraining Olga E. against her will, we must reverse appellant's conviction of felony false imprisonment." (*People v. Matian, supra*, 35 Cal.App.4th at pp. 486–487.)

Here, appellant argues that if the facts in *Matian* do not rise to the level of felony false imprisonment, his encounter with Diana cannot so qualify. We do not agree. We have trouble understanding the conclusion the Court of Appeal reached in *Matian*. While the opinion does not discuss the underlying sexual crimes, it is clear that the false imprisonment followed immediately after the forcible sexual assaults during which appellant squeezed the victim's breast so hard as to cause her pain and possibly even bruising. Thereafter, the perpetrator yelled at the victim "nothing happened," attempting to intimidate her into not reporting the incident. He then told her to wash her face and she took a seat nearby, within view of the perpetrator who was in his office. When the victim attempted to leave, the perpetrator glared at her and got out of his chair as if he was going to approach her. Given the immediately preceding sexual assaults, and the command to her that "nothing happened," it is reasonable to conclude the victim was intimidated by the perpetrator. In fact, she testified that she was afraid and did not want him to touch her again. We have no problem with concluding the evidence addressed in the published portion of the opinion supported the conviction for felony false imprisonment by menace, if not violence. Thus, we do not agree with the result in *Matian*, or with appellant's argument that comparison with the facts in *Matian* requires reversal of his conviction for felony false imprisonment.

In the present case, appellant grabbed the victim and turned her around. If that is all that had happened, we would agree with appellant that his conduct amounted only to misdemeanor false imprisonment. But appellant pulled her toward his car, an act more than what was required to stop her and keep her where she was located. The record is silent whether the victim, when testifying, used body language which may have given the jury additional information than what is contained in the sterile record we have to review. In any event, we conclude the evidence that appellant used force to pull the victim toward his car was sufficient to establish force above that required for misdemeanor false imprisonment. Thus, the conviction for felony false imprisonment is supported by sufficient evidence.

## 2. *Jury Instruction on Misdemeanor False Imprisonment*

Appellant argues that the trial court committed prejudicial error by not including in its charge to the jury an instruction on the lesser offense of misdemeanor false imprisonment.

During oral argument we inquired of counsel whether the allegations of the information were sufficient to bring misdemeanor false imprisonment within the scope of lesser included offenses to the offense charged, attempted kidnapping. Appellant's counsel pointed out that the information alleges that appellant "did unlawfully, attempt to forcibly and by instilling fear, steal, take, hold, detain and arrest DIANA [N.] . . . and *did take* the said DIANA [N.] into . . . another part of Los Angeles County." (Italics added.) He argued this was sufficient to trigger the court's sua sponte duty to instruct on misdemeanor false imprisonment as well as the other lesser offenses for which instructions were given. We requested that the parties file supplemental briefs on this issue. They have done so.

■ "Under the accusatory pleading test, . . . we look . . . to whether the accusatory pleading describes the greater offense in language such that the offender, if guilty, must necessarily have also committed the lesser crime." (*People v. Moon* (2005) 37 Cal.4th 1, 25–26 [32 Cal.Rptr.3d 894, 117 P.3d 591].) Respondent concedes that test has been met here, and we accept the concession. Respondent argues that the failure of the trial court to instruct on misdemeanor false imprisonment was harmless. We cannot agree.

■ Reversal is warranted if "it appears 'reasonably probable' the defendant would have achieved a more favorable result had the error not occurred. [Citation.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 149 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) We have previously concluded there is sufficient evidence to support the conviction for felony false imprisonment. But the facts contained within the sterile record are not so strong as to permit us to conclude the error was not prejudicial. The facts are sufficiently ambiguous that a conviction for misdemeanor false imprisonment might also have been justified, depending on the actual force appellant used in drawing the victim toward himself. Thus we cannot say that the instructional error in this case is harmless. Accordingly, we reverse the conviction on count 1.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings with regard to count 1, and resentencing.

Curry, Acting P. J., concurred.

**WILLHITE, J., Concurring.**—I fully concur in the opinion. Because of the unusual circumstances in this case, I write separately only to state my view of the options on remand.

The conviction for lewd conduct (Pen. Code, § 647.6, subd. (a)) on count 2 is unaffected by our holding. As to count 1, the prosecution may request that the court reinstate the conviction of the lesser related offense of battery (Pen. Code, § 242), and the court may then resentence on that conviction in count 1 and the lewd conduct conviction on count 2.[1]

On the other hand, the prosecution may seek to retry appellant on the charge of felony false imprisonment in count 1. In that event, resentencing on counts 1 and 2 would await the outcome of the trial on the felony false imprisonment charge. Because the jury in the instant trial acquitted appellant of attempted kidnapping on count 1, he is not subject to retrial on that charge.

---

[1] Because assault (Pen. Code, § 241) is a lesser included offense of battery, the conviction of assault on count 1 should remain dismissed, as defendant can only be sentenced on the greater offense of battery.