Filed 3/17/14  P. v. Hasan CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HAMEED ABDUL HASAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B243111<br>(Super. Ct. No. 2010023345)<br>(Ventura County) |

Hameed Abdul Hasan appeals from the judgment following his conviction by jury of battery with serious bodily injury (Pen. Code, § 243, subd. (d))[1] and false imprisonment by violence (§ 236).  The trial court suspended the imposition of sentence and placed appellant on probation for 36 months, subject to serving 240 days in county jail, among other conditions.  Appellant contends the trial court erred by (1) excluding a nude photograph of the victim; (2) admitting hearsay evidence; (3) instructing the jury that evidence that acquaintances of a witness did not discuss her character for truthfulness supports the inference her character for truthfulness is good; (4) failing to instruct the jury sua sponte with a lesser included misdemeanor false imprisonment instruction; (5) committing *Griffin* error by instructing the jury that appellant made a tactical decision not

_____

**1** Unless otherwise indicated, all further statutory references are to the Penal Code.

to testify at the preliminary hearing;[2] and (6) denying his new trial motion based on his claim that trial counsel was ineffective.  We affirm.

FACTUAL AND PRCEDURAL BACKGROUND

*Prosecution Evidence*

Lilia Akhmedjanova testified that she and appellant had a "purely platonic" relationship.  Appellant was a friend of her boyfriend, Christian Smith (Chris).  The three of them "[hung] out . . . as a group."  In the summer of 2010, she and Chris "separated."  During that time Lilia still "hung out" with appellant, and sometimes slept on the couch in his apartment.

Lilia stayed at appellant's apartment on June 18, 2010.  The following night, she accompanied him to a party hosted by Kathleen Jones.  Appellant drove to the party.  Lilia left some of her belongings in his apartment.  Appellant had a date with someone else after the party, but agreed to drive Lilia from the party to her car.  During the party, Lilia met Justin Ussery and agreed to see him later.  Appellant drove Lilia to her car.  She returned to the party and waited outside for Ussery.  They left and went to a hotel.

After midnight, appellant sent Lilia several text messages, including two that read as follows:  "Damn Lil, hope you enjoy that shit.  You're a foul ass."  "You don't care who hits it?"  In a third message, sent at about 3:00 a.m., he called her a "whore," and said, "You obviously do find dick anywhere."  She was surprised by the messages.

Later on Sunday morning, appellant sent Lilia a message asking that she stop at his apartment for her belongings.  She drove there in the early afternoon, parked, and called him.  Then she went to his apartment and entered when he opened the door.  Appellant quickly shut the door, pushed Lilia back into his bedroom, shoved her on the bed, and punched her in the face.  He was much larger than Lilia, who weighed about 100 pounds.  Appellant told Lilia she was not going anywhere.  He walked out of his bedroom and closed the door.  For a while, Lilia stayed in appellant's bedroom, afraid of

_____

[2] (*Griffin v. California* (1965) 380 U.S. 609.)

2

encountering him if she tried to leave through the front door. She managed to leave through a sliding glass door, climb over a low wall on appellant's patio, onto the low roof of the adjacent parking complex, and over a low wall to the neighbor's patio. The neighbors were not home. She returned to appellant's bedroom. Some time later, Lilia went to the living room to get her purse and cell phone. She found her purse, but it was empty. She asked appellant for her phone and other belongings. He told her she was "not going anywhere."[3] She looked further, found her cell phone between the sofa cushions, and returned to the bedroom. She called her father, Malik Akhmedjanova, asked him to drive her home, and gave him directions to the apartment.

Malik went to appellant's apartment. He found Lilia in the living room crying and took her home. He discouraged her from calling the police because her injury did not look that bad, and he feared appellant would retaliate. Lilia hesitated to report the incident because appellant had been to her home, and the law enforcement system in her home country was not effective.

On the following day, Lilia's face was terribly swollen. Her mother, Rima Akhmedjanova, cried when she saw it. Lilia telephoned the police and met with them. An officer arranged for an ambulance to transport her to the hospital. Dr. Carlos Reyes, who treated Lilia, testified there was a fracture on the right side of her face, around her right eye and nasal bone. Ventura County Sheriff's Deputy Javiar Alcala interviewed Lilia at the emergency room and photographed her injuries. He observed bruises on her arm, where appellant had grabbed her. Lilia suffered nerve damage and other injuries that required medical treatment after she left the emergency room.

Rima kept the telephone numbers of Lilia's friends, including appellant, in her cell phone. On Monday, she noticed she had missed a call from appellant. She returned his call. Appellant said he was wondering how Lilia was doing. Rima answered, "Not good. You hit my -- it's really bad, and I took her to the hospital." He

---

[3] Lilia was uncertain about the precise sequence and location of events. She could not answer whether appellant said she was not going anywhere before or after he hit her, or whether they were in the bedroom or living room when he said that.

was quiet, and then talked briefly. Rima said she had "nothing to do with this," and it was Lilia's "decision what [she was] going to do about this." Before Rima ended the call, appellant said, "[he was] sorry, he didn't mean to hurt that little girl."

A few days later, Ventura County Sheriff's Department Detective Matt Young met with Lilia at the station. Lilia used the station telephone and recording equipment to call appellant. During the call, they talked about how they went to the party together and she left with someone else. She said that was not a reason to hit a woman, and he said two wrongs do not make it right. He said, "I promise I'll never hurt you again."

*Defense Evidence*

Appellant testified that he and Lilia were friends for several years while she dated his good friend, Chris. After Chris and Lilia broke up, appellant's friendship with Lilia became closer and changed into a sexual relationship. She visited his apartment, drank, and sometimes stayed for several days. At times, her parents picked her up there. Appellant took nude pictures of Lilia after some of their sexual encounters.

Lilia stayed at appellant's apartment on June 18, 2010. They drank alcohol and had sex. Lilia was "guzzling Bacardi" in appellant's kitchen before he took her to a party at Kathleen Jones' home on June 19. He had a date to meet someone else after the party. Lilia was drunk before the party, and continued drinking there. Jones and her husband eventually asked appellant to take Lilia home, and he drove her back to her car. She called later and asked him to pick her up; he did not. He returned to the party without her. Someone at the party told him Lilia was meeting Ussery "for sex." Appellant stayed overnight at the Jones residence.

Appellant went home on Sunday, about 8:30 a.m. He sent Lilia a text message telling her to pick up her belongings from his apartment. After calling, she arrived at his apartment, around 11:30 a.m., intoxicated and smelling of alcohol. She sat in his living room, drinking vodka and Gatorade. At around 1:45 p.m., he asked Lilia to

4

stop drinking, and she became belligerent.  He wanted to call her father to pick her up, and started using Lilia's cell phone.  She tried to get it back, and then went to the bedroom.  After speaking with Malik, appellant went to the bedroom, but Lilia was gone.  He drove around the apartment complex looking for her, and found her on the garage roof.  She fell off and "landed on her butt," with her "[k]nees to the chest area."  She "must have hit her head on her knees."  The area where she landed had a wooden fence, a brick wall and a tree.  He helped her, and asked if she was okay.  She said she was okay.  He told her Malik was on his way.  Malik arrived, and took Lilia to his car.  Appellant led them to the freeway.  About 30 minutes later, he called Malik to be sure they "made it home okay."  Malik said he could not talk because he "was still fighting with Lili to get her into the house."

Appellant admitted he sent Lilia the text messages.  The messages could not be understood without the "entirety of the conversation."  He and Lilia had an open relationship and he was not jealous about her having spent the night with Ussery.

Appellant denied that he took Lilia "into the back room and hit her in the face" when she went to his apartment on Sunday.  He also denied he told Rima that he "hurt that little girl."  He told her he would "never harm that little girl."

Kathleen Jones testified appellant brought Lilia to her party.  Jones thought Lilia was appellant's girlfriend because they attended an event at her home on a prior occasion, when they had planned to stay overnight in a bedroom there.  On June 19, Lilia was falling down, hugging people, and "petting" children and entering their bedrooms.  Jones and her husband asked appellant to take Lilia home.  He left to take her home, returned without her, and stayed overnight.

Aneesah Hasan, appellant's mother, testified he was an honest person with a good character.  She also testified he was not at all violent.

5

DISCUSSION

*Evidentiary Issues*

Appellant contends the trial court erred by excluding a nude photograph of Lilia (exhibit K), which deprived him of his constitutional right to confrontation. We disagree.

We review a court's exclusion of evidence for abuse of discretion and will not disturb it unless it exceeds the bounds of reason. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1113, overruled on another point by *People v. Rundle* (2008) 43 Cal.4th 76, 151.) The confrontation clause of the federal Constitution guarantees a criminal defendant the right to confront the prosecution's witnesses. (U.S. Const., 6th Amend.) "That right is not absolute, however." (*People v. Cromer* (2001) 24 Cal.4th 889, 892.) "'[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.' [Citation.] [N]otwithstanding the confrontation clause, a trial court may restrict cross-examination of an adverse witness on the grounds stated in Evidence Code section 352. [Citation.] A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted. [Citations.]" (*People v. Quartermain* (1997) 16 Cal.4th 600, 623-624 (*Quartermain*).)

Appellant's counsel sought to cross-examine Lilia with four photographs depicting her nude body. He argued that Lilia's credibility was at issue, and the photographs proved she was lying when she testified she did not have a sexual relationship with appellant. The court asked when the photographs were taken, and counsel said he "guess[ed] the week preceding the event." The court examined the photographs and observed they would "evoke[] the emotions of the jury on an issue which has nothing to do with the elements of [the offenses]." The court also noted foundational issues surrounding Exhibit K, in which Lilia appeared to be "either asleep or

6

unconscious."  For example, appellant could testify he took the photographs, but Lilia might not "know if she was dressed before the picture [was taken] and then . . . undressed [involuntarily]."  The court excluded the photographs pursuant to Evidence Code section 352 because their prejudicial impact, confusing the issues and misleading the jury, outweighed their limited probative value.  The court further ruled appellant could testify about the nature of his relationship with Lilia and "even testify that he took pictures."  Appellant testified he took nude pictures of Lilia during and after their sexual encounters.  He also viewed and identified Exhibits K-M as the photographs during cross-examination.

The trial court acted within its discretion in excluding the nude photograph of Lilia.  We cannot conclude "a reasonable jury might have received a significantly different impression of [Lilia's] credibility had the excluded cross-examination [regarding that photograph] been permitted."  (*Quartermain, supra*, 16 Cal.4th at pp. 623-624.)  The court did not violate appellant's confrontation rights by excluding Exhibit K.  (*Ibid.)*

Appellant also contends the court committed prejudicial error by admitting Detective Young's hearsay testimony describing Lilia's "cool call" to appellant.  We conclude any error relating to that testimony was harmless.  The evidence concerns statements appellant made when Lilia telephoned him, while meeting with Detective Young at the station.  At Young's suggestion, Lilia called appellant on a telephone with recording equipment.  Due to a malfunction in the recording equipment, there was no record of appellant's statements.  Over a hearsay objection, Young testified Lilia told him appellant "admitted to striking her," and "admitted" what he did.  The court admitted that testimony as a prior consistent statement, pursuant to Evidence Code sections 1236 and 791, subdivision (b), because appellant repeatedly implied that her testimony was fabricated and biased.  Evidence Code section 791 authorizes the admission of a prior consistent statement which is "offered after . . . [a]n express or implied charge has been made that [the witness's] testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for

7

fabrication, or other improper motive is alleged to have arisen." (At subd. (b).) Here, appellant was not implying Lilia recently fabricated testimony about his cool call statements. He implied she lied about them from the outset, in describing them to Young. The court erroneously admitted Young's hearsay testimony pursuant to Evidence Code section 791, subdivision (b). However, any error associated with that evidence was harmless because it was cumulative. Lilia testified that during the cool call, appellant promised he would "never hurt [her] again." In addition, Rima testified about a similar admission appellant made to her. There is no reasonable probability the jury would have reached a more favorable verdict but for the admission of Young's hearsay testimony. (*People v. Watson* (1956) 46 Cal.2d 818.)

*Instructional Issues*

Appellant claims the trial court erred by instructing the jury that "[i]f the evidence establishes that a witness's character for truthfulness has not been discussed among the people who know him or her, you may conclude from the lack of discussion that the witness's character for truthfulness is good." (CALCRIM No. 226.) He claims the evidence did not support that instruction, and the error was prejudicial because it allowed the jury to presume that Lilia's "character for truthfulness was good." We agree the court erred by giving that instruction but conclude its error caused no harm. The challenged instruction only allowed the jury to conclude the witness had a good character for truthfulness *if* the evidence established her acquaintances did not discuss her character for truthfulness. In addition, the court instructed the jury with CALCRIM No. 200 that some of the instructions might be inapplicable. It is presumed the jurors understood and correctly applied the instructions. (*People v. Carey* (2007) 41 Cal.4th 109, 130.)

Appellant also contends the trial court erred by failing to instruct the jury, sua sponte, that misdemeanor false imprisonment is a lesser included offense of false imprisonment by violence (felony false imprisonment). We disagree. A trial court must instruct the jury on a lesser included offense when the evidence raises a question as to whether all of the elements of the charged offense were present, but not when there is no

8

evidence that the offense was less than that charged. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1085; *People v. Breverman* (1998) 19 Cal.4th 142, 154, 162; *People v. Matian* (1995) 35 Cal.App.4th 480, 484, fn. 4.) "'Force is an element of both felony and misdemeanor false imprisonment. Misdemeanor false imprisonment becomes a felony only where the force used is greater than that reasonably necessary to effect the restraint. In such circumstances the force is defined as "violence" with the false imprisonment effected by such violence a felony.' [Citation.]" (*People v. Castro* (2006) 138 Cal.App.4th 137, 140.) There is no substantial evidence that Lilia was restrained without the use of violence or menace. Lilia testified appellant pushed her into his bedroom, shoved her on the bed, and punched her in the face.

Appellant further claims that the trial court committed *Griffin* error by instructing the jury that appellant made a tactical decision not to testify at the preliminary hearing. (*Griffin v. California, supra,* 380 U.S. 609.) We agree but conclude the error was harmless.

The court gave the erroneous instruction in response to the following statements trial counsel made in closing argument: "And I want to thank you for staying through the entire trial because throughout the entire pendency of this case until now, until this trial, no one has ever heard from the defendant's side of this case. No one. They heard from Lilia . . . , and they prosecuted based upon what Lilia . . . told them, but they never went to the defendant and listened to his side of the story. [¶] So literally you are the first time the defendant ever had any ability to tell anyone, other than me, his counsel, what occurred and what transpired."

The court explained, outside the jury's presence, that counsel had misstated the law because appellant had the right to testify at the preliminary hearing. Counsel acknowledged appellant had that right, and indicated he would "acquiesce to the Court remedying [his misstatement of the law] any way possible." The court instructed the jury as follows: "A statement was made in argument that this was the first opportunity for the defendant to tell his story. Actually, during a preliminary hearing, the defendant has an

9

opportunity to tell his or her story. Typically a defendant does not testify during a preliminary hearing, but he or she has the right to do so. [¶] So since I have to deal with the law, I wanted to clarify that point of law. This is not the first time that the defendant has had the opportunity to tell his story, but for whatever reason, tactical reasons, which we understood he chose not to do so at the preliminary hearing." Appellant did not object to the court's remedial instruction.

"In *Griffin*, the United States Supreme Court held that the privilege against self-incrimination of the Fifth Amendment prohibits any comment on a defendant's failure to testify at trial that invites or allows the jury to infer guilt therefrom, whether in the form of an instruction by the court or a remark by the prosecution." (*People v. Clair* (1992) 2 Cal.4th 629, 662.) Appellant argues the court's instruction implied that he remained silent at the preliminary hearing because he was guilty, and fabricated his trial testimony. We must view a challenged portion of the instructions "in the context of the instructions as a whole and the trial record" to determine "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." (*Estelle v. McGuire* (1991) 502 U.S. 62, 72; see *People v. Reliford* (2003) 29 Cal.4th 1007, 1013.) No "reasonable likelihood" of an interpretation amounting to *Griffin* error exists here where the court instructed the jury that defendants do not typically testify at the preliminary hearing.

*New Trial Motion (Ineffective Assistance of Counsel)*

Appellant further argues the trial court erred in denying his new trial motion based on his claim he was deprived of the effective assistance of counsel at trial. We disagree.

To establish ineffective assistance of counsel, a defendant must establish that his attorney's representation fell below an objective standard of reasonableness under prevailing professional norms, and that he suffered prejudice therefrom. (*Strickland v. Washington* (1984) 466 U.S. 668, 694; *People v. Riel* (2000) 22 Cal.4th 1153, 1175.) Prejudice is established by showing there is a reasonable probability of a more favorable

10

result absent his attorney's shortcomings. (*Ibid*.) A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. (*Ibid*.) A reviewing court may resolve an ineffective assistance of counsel claim by deciding only the question of prejudice. (*Strickland,* at p. 697.) Appellant bases his ineffective assistance of counsel claim on trial counsel's failure to obtain records of his telephone calls from June 18, through June 20, 2010. He argues those records would have shown he had frequent contact with Lilia and her parents on their cell phones, and made frequent attempts to contact them. The records were largely cumulative because the prosecution and defense both presented evidence that appellant used his phone to communicate with Lilia, her mother and her father during that time frame. Appellant has not established counsel's failure to present the telephone records was prejudicial.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

11

Brian J. Back, Judge

Superior Court County of Ventura

_____

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, John Yang, Deputy Attorney General, for Plaintiff and Respondent.