Filed 4/22/15  P. v. Howard CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ARTHUR ROGERS HOWARD,<br><br>Defendant and Appellant. | B254208<br><br>(Los Angeles County<br>Super. Ct. No. BA396467) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Affirmed.

Janet J. Gray, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, William H. Shin and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Defendant Arthur Rodgers Howard appeals from a judgment of conviction entered after a jury trial. Howard was charged in a second amended information with one count of attempted kidnapping of B.C., a 13-year-old girl, with a special allegation the victim was under the age of 14 years (Pen. Code,[1] §§ 207, subd. (a), 664; count 1), and one count of failure to register as a sex offender upon release from incarceration (§ 290.015, subd. (a); count 3).[2] The information also alleged Howard suffered two prior serious or violent felony convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and had previously served six separate prior prison terms (§ 667.5, subd. (b)). The trial court granted Howard's motion to sever the failure to register count from the attempted kidnapping count and to bifurcate trial on the prior conviction allegations.

The jury found Howard not guilty of attempted kidnapping, but convicted him of the lesser included offense of felony false imprisonment, in violation of section 237. Howard pleaded no contest to the failure to register charge, and admitted the prior convictions.

On appeal, Howard contends there was not substantial evidence that he used any more force than was necessary to restrain B.C.'s movement. We affirm. However, we correct clerical errors on the abstract of judgment, including that Howard was convicted of attempted kidnapping instead of felony false imprisonment and imposing a three-year term on count 3 without doubling the term under the three strikes law. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [appellate court may order abstract of judgment corrected to accurately reflect trial court's oral pronouncement].)

---

[1]     All statutory references are to the Penal Code.

[2]     Count 2 for attempted kidnapping of B.C.'s brother Johnny C. on the same date was dismissed prior to trial.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.  *Testimony at Trial***

The evidence at trial established that on the evening of April 11, 2012, Howard approached 13-year-old B.C. near the corner of South Broadway and Florence Avenue in Los Angeles as she was walking with her mother Paula Alonso and her younger brother. Howard grabbed B.C.'s wrist and attempted to pull her toward the street.  The primary issue at trial was whether Howard acted with the specific intent to kidnap B.C or, as to the lesser included offense of false imprisonment, whether Howard restrained B.C. by violence or menace.

### 1.  The Prosecution's Witnesses

a.  *B.C.'s Testimony*

B.C. testified she and her mother were holding hands with her three-year-old brother and walking down Florence Avenue towards South Broadway.[3]  B.C. was closest to the street.  B.C. heard a woman scream that somebody had touched her.  B.C. testified that, shortly thereafter, Howard came up and "grabbed me by my right arm. . . .  He tried to pull me away."  Howard grabbed her by the wrist.

Howard said either "Come with me" or "Come here," and tried to pull B.C. towards the street.  B.C. said, "No" and was "pulling against him."  B.C. was unable to break free of Howard's grasp, and he moved her "two to three feet."  B.C. never released her brother's hand because she was afraid her little brother would run away and "because [she] was afraid of being taken away."  Howard let go of her wrist and fled when some men at a nearby bus stop came toward them.  B.C. later told police officers Howard was "drunk" because he smelled of alcohol.

---

[3]     B.C. was 14 years old when she testified at trial.

3

B.C. identified Exhibit 2 as a photograph of herself taken on April 11, 2012 while she was still in the area of Florence Avenue and South Broadway. B.C. testified:

"Q. And I notice in People's Number 2, you are pointing to your right arm. Why are you pointing to that area?

"A. Because it was red.

"Q. And the redness that you are talking about, is that from when you were grabbed?

"A. Yes."

B.C. saw Howard cross the street and enter a Jack in the Box restaurant.


b. *Paula Alonso's Testimony*

B.C.'s mother Alonso testified that while she was walking with B.C. and her son on Florence Avenue, she saw Howard near a bus stop ahead of them. He placed his palms on a woman's chest and rubbed her breasts. The woman pushed Howard off of her and boarded a bus. Alonso testified Howard then quickly turned and grabbed B.C's arm. He said, "Come on," and pulled B.C. toward the street. Alonso testified she pulled on her son and tried to grab her daughter to get her away from Howard. She told Howard in Spanish to let go of B.C. Howard did not release B.C. and was able to pull her a distance of "four to five feet more or less."

Alonso testified she was unable to break Howard's grasp of her daughter's arm until two men at the nearby bus stop approached to help. At that point, Howard ran across the street and entered a Jack in the Box restaurant. Alonso called 9-1-1. She observed that the restaurant "kicked him out," and Howard returned to near where she was standing with B.C. and her son. Shortly thereafter, Alonso flagged down a passing patrol car and directed the police officer to the entrance of an alley where she last saw Howard. Alonso also told the officer that Howard was drunk because she could smell alcohol on his breath and he staggered when he walked.

4

### c. *Manuel Munoz's testimony*

Manuel Munoz testified he owned a store near Florence Avenue and South Broadway. On the evening of April 11, 2012, he saw B.C. with her mother on Florence Avenue. He testified as to B.C. that "she was scared." At some point Munoz saw Howard run towards an alley when the police arrived. Munoz directed the officers to the alley.

### d. *Officer Nielson's Testimony*

Los Angeles Police Officer Bradley Nielson testified he was on patrol on the evening of April 11, 2012, when Alonso flagged him down. Nielson got out of his car to speak with Alonso. Alonso was "frantic" and speaking in Spanish, and Nielson could not understand her. Munoz translated for Alonso. Nielson then entered the alley and found Howard under a car in a parking lot adjacent to the alley. Nielson took Howard into custody, escorted him to the patrol car, and waited for assistance from additional officers. Alonso approached and began talking in Spanish to Munoz, who was standing with Nielson and Howard. Nielson testified that Howard volunteered, "I didn't touch that bitch. I didn't grab on the bitch." Nielson had not mentioned touching or grabbing anybody before Howard made the statement.

At some point, Howard gave a false name to Nielson and was placed in the patrol car. Although Nielson and another officer never questioned Howard about what had occurred, Howard repeatedly asked them, "I'm suppose[d] to have grabbed the little kid's arm?" and then denied it.[4]

---

[4] A video recording of Howard's conversation with the two officers inside the patrol car was played during trial for the jury, and a transcript of the recording was provided to the jurors.

5

### 2. The Defense Case

The defense called B.C. who testified she did not recall seeing Howard grab anyone's breast on the evening of April 11, 2012. Howard did not testify.

### B. *Verdict and Sentencing*

The jury acquitted Howard on the charge of attempted kidnapping and convicted him of the lesser included offense of felony false imprisonment by force or menace (§ 237).[5] Howard then pleaded no contest to the charge of failure to register (§ 290.015, subd. (a)). Howard also admitted the allegations as to his prior convictions, including a prior conviction under the three strikes law.

The trial court denied Howard's motion to strike his prior serious felony conviction. The court selected count 1 for felony false imprisonment by force or menace as the base term and imposed the upper term of three years, doubled as a second strike (§§ 667, subds. (a)(1), (b)-(i), 1170.12), for a term of six years. The court imposed one year for each of the three prior prison terms (§ 667.5, subd. (b)) for an additional three years. The court sentenced Howard to the upper term of three years on count 3 for failure to register as a sex offender, to run concurrent to count 1.[6] The court dismissed the three remaining prior prison term enhancements (§ 1385). The court sentenced Howard to a total aggregate term of nine years in state prison.

---

[5]     The trial court instructed the jury on attempted kidnapping and the lesser included offenses of false imprisonment by force or menace and misdemeanor false imprisonment.

[6]     The court should have doubled the sentence on count 3 under the three strikes law for a total of six years to run concurrent. The abstract of judgment is modified to reflect this six-year term on count 3. Because the court ordered count 3 to run concurrent, this change does not modify the aggregate prison sentence.

## DISCUSSION

### A.  *Standard of Review*

"Our task in deciding a challenge to the sufficiency of the evidence is a well-established one.  '[W]e review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  In cases in which the People rely primarily on circumstantial evidence, the standard of review is the same.  [Citations.]'  [Citations.]"  (*People v. Solomon* (2010) 49 Cal.4th 792, 811.)

We presume in support of the judgment the existence of any fact the jury reasonably could have deduced from the evidence.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  In applying this standard, "'[w]e resolve neither credibility issues nor evidentiary conflicts . . . .  [Citation.]'  [Citation.]  A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict.  [Citation.]"  (*Ibid.*)

### B.  *There was Substantial Evidence To Support a Conviction for Felony False Imprisonment*

Howard argues that his conviction for felony false imprisonment must be reversed because there was insufficient evidence that he restrained B.C. by violence or menace.  We disagree.

#### 1.  Felony false imprisonment requires proof of restraint by force or menace.

"False imprisonment is the unlawful violation of the personal liberty of another." (§ 236.)  The crime of false imprisonment is elevated to a felony when it is "effected by

7

violence, menace, fraud, or deceit . . . ."[7]  (§ 237, subd. (a); *People v. Islas* (2012) 210 Cal.App.4th 116, 122.)  As this district has held:  "'Force is an element of both felony and misdemeanor false imprisonment.  Misdemeanor false imprisonment becomes a felony only where the force used is greater than that reasonably necessary to effect the restraint.  In such circumstances the force is defined as "violence" with the false imprisonment effected by such violence a felony.'  [Citation.]"  (*People v. Castro* (2006) 138 Cal.App.4th 137, 140 (*Castro*); accord, *People v. Dominguez* (2010) 180 Cal.App.4th 1351, 1357.)  False imprisonment by menace entails "'a threat of harm express or implied by words or act.'"  (*People v. Islas*, *supra*, at p. 123.)

**2.  There was substantial evidence that Howard restrained B.C. by the use of violence.**

Howard does not contest that when he grabbed B.C's wrist and pulled her against her will, he violated her "personal liberty" sufficient to support a verdict of misdemeanor false imprisonment.  (See § 236; *People v. Reed* (2000) 78 Cal.App.4th 274, 280 ["""personal liberty"""" violated for false imprisonment where "'the victim is "compelled to remain where [she] does not wish to remain, or to go where [she] does not wish to go"'""].)  Instead, Howard contends the evidence is insufficient to show he used any more force than was "'reasonably necessary to effect the restraint.'"  (*Castro*, *supra*, 138 Cal.App.4th at p. 140.)

The holding in *Castro* is directly on point.  There, the defendant made a lewd comment to a 16-year-old girl, to which she responded, "You're a dirty man."  The defendant then grabbed the girl's arm, turning her around and causing her to take a few steps toward defendant's car.  (*Castro*, *supra*, 138 Cal.App.4th at p. 139.)  In finding the

---

[7]  Felony false imprisonment is punishable by imprisonment in state prison for 16 months, two years or three years.  (§§ 18, 237, subd. (a).)  Misdemeanor false imprisonment is punishable by imprisonment in the county jail not to exceed one year and/or a fine of $1,000.  (§ 237, subd. (a).)

defendant's conduct was sufficient to support felony false imprisonment by violence, the court reasoned, "appellant grabbed the victim and turned her around. If that is all that had happened, we would agree with appellant that his conduct amounted only to misdemeanor false imprisonment. But appellant pulled her toward his car, an act more than what was required to stop her and keep her where she was located." (*Id*. at p. 143.)

Here, Howard did more than merely restrain B.C. by grabbing her arm. It is clear from B.C.'s testimony and the photographic evidence that Howard grabbed B.C.'s wrist with enough force to cause her wrist to become red and to move her body two to five feet toward the street,[8] even though B.C. was pulling away from him and holding her brother's hand.

Howard's reliance on our decision in *People v. Matian* (1995) 35 Cal.App.4th 480 (*Matian*) is misplaced. Most notably, *Matian* involved the question of whether the defendant committed felony false imprisonment by menace, not violence.[9] In *Matian*, the defendant sexually assaulted the victim, then when she started to leave, he grabbed her arm and yelled at her, "'nothing happened.'" The victim then sat down in a chair in the room while the defendant glared at her from an adjacent office and got up out of his chair to approach her every time she started to leave. (*Id.* at p. 485.) The victim testified she stayed in the room because she did not want him to touch her again. (*Ibid*.) The People conceded there was no evidence the defendant used violence to restrain the victim's liberty. (*Ibid*.)

---

[8]     B.C. testified that Howard moved her two to three feet toward the street; Alonso testified that Howard moved B.C. four to five feet. Howard seeks to distinguish *Castro* on the basis that the defendant in that case attempted to pull the victim toward the car and directed a lewd conduct toward her. However, this district in *Castro* based its holding on the fact the defendant moved the victim several feet toward his car, not the lewd conduct. (*Castro*, *supra*, 138 Cal.App.4th at p. 143.) Here Howard similarly moved B.C. up to five feet toward the street.

[9]     For the same reason, Howard's reliance on two other cases involving the standard for menace are not persuasive. (See *People v. Wardell* (2008) 162 Cal.App.4th 1484, 1490-1491; *People v. Aispuro* (2007) 157 Cal.App.4th 1509, 1513.)

9

We found that the defendant's actions to glare at the victim while getting out of his chair and approaching her each time she tried to leave was "inadequate to establish an express or implied threat of harm." (*Matian*, *supra*, 35 Cal.App.4th at pp. 486-487.)[10]  In this case, we need not address the required showing for menace because, as we discuss above, there was sufficient evidence of violence to support Howard's conviction for felony false imprisonment.

---

[10]     As Howard acknowledges, since we decided *Matian* in 1995, this district has criticized its holding.  (See *Castro*, *supra*, 138 Cal.App.4th at p. 143 ["[t]hus, we do not agree with the result in *Matian*"]; *People v. Islas*, *supra*, 210 Cal.App.4th at p. 125 ["[b]ased on the criticism of *Matian* . . . it is clear the absence of an express threat, weapons or physical contact with the victim is not determinative"].)  Other districts have similarly criticized the holding in *Matian*.  (See *People v. Wardell*, *supra*, 162 Cal.App.4th at p. 1491 ["*Matian*'s holding has been roundly criticized, even within the Second District"]; *People v. Aispuro*, *supra*, 157 Cal.App.4th at p. 1513 ["[w]e disagree with the *Matian* court's conclusion that such facts were inadequate to establish an express or implied threat of harm"].)  We need not revisit *Matian* here, however, because we find sufficient evidence of violence to uphold the felony false imprisonment conviction.

## DISPOSITION

The judgment is affirmed.  The abstract of judgment is corrected to reflect that a jury convicted Howard of felony false imprisonment, a lesser included offense of attempted kidnapping, and to reflect a six-year term on count 3 to run concurrent to the sentence on count 1.  The superior court is directed to prepare a corrected abstract of judgment and to forward it to the Department of Corrections and Rehabilitation.


FEUER, J.*


We concur:



PERLUSS, P. J.



ZELON, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.