Filed 4/9/25  P. v. Price CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RUBYE DENISE PRICE<br><br>    Defendant and Appellant. | A169610<br><br><br>(San Mateo County<br>Super. Ct. No. 22SF006689A) |

A jury convicted Rubye Denise Price of assault with a deadly weapon after she drove into the victim following a physical altercation and pushed the victim into a fence.  (Pen. Code, § 245, subd. (a).)[1]  The trial court sentenced Price to four years in prison.  On appeal, Price contends there was insufficient evidence to support the finding that she willfully and knowingly committed assault with a deadly weapon.  We affirm.

## BACKGROUND

I.  **Prosecution Evidence**

    **A. Collision**

The victim testified that she is Price's cousin.  In the fall of 2021, the victim began an intimate relationship with a man who she knew was also in a relationship with Price.  Price apparently learned about the relationship

---

[1] Undesignated statutory references are to the Penal Code.

from a photo the victim posted on social media and tried to call her "100 times or more" in the space of an hour, but the victim did not answer any of the calls, realizing that Price was upset.

On the evening of April 28, 2022, the victim exited her apartment after a friend texted her to "come outside." Stepping outside, she saw Price and Price's brother walking up the driveway toward her. A physical altercation ensued. At some point the friend who had texted the victim arrived, and Price's brother tried to grab the victim. The victim told her friend to get the mace from her dresser. Later, when the victim began to spray, Price's brother reached for the mace and threw it to the ground.

Price ran back to her vehicle and got into the driver's seat. The victim followed and got into the car on the passenger's side, where the fight continued until Price's brother grabbed the victim by the waist and pulled her out. Price yelled to her brother, "let's go," and put her car in reverse, rapidly backing out and knocking him and the victim to the ground. Price's brother yelled out in pain as the car rolled over his ankle. At that point, the victim began running toward her apartment, fearing that Price was trying to run her over. Price shifted her car into drive and accelerated forward twice— first inching forward just enough to free her brother, then abruptly accelerating and turning right into the victim.

The collision propelled the victim into a chain-link fence, causing it to collapse onto a neighbor's parked minivan, shattering the driver's side window. The victim testified that the impact caused her to "black[] out," and when she regained consciousness, she was unable to stand or bear the weight

on her left leg. She added that shortly after driving off, Price returned to the apartment complex twice.

Ultimately, the victim underwent surgery for a fractured tibial plateau and began physical therapy.

### B. Price's Custodial Interview

Price's recorded custodial interview was played for the jury. Price told the officers that she went alone to the victim's apartment on the day of the incident. She claimed that the victim was waiting for her with mace in hand and that the victim "sprayed [her] before anything." Price also claimed that the victim, her friend, and another woman attacked her. Price maintained that she "never really fought back," although she admitted to biting two of the women. She explained that she ran to her car and that the victim followed her and tried to attack her again. Price "swung the car" merely to get her out of the vehicle. She denied running over or striking anyone with her car, and stated that when she first arrived, the minivan's window was already broken. She further claimed that the car "had a lot of problems" and that she now had a different vehicle.

## II.    Defense Evidence

### A.    Price's Testimony

Price testified at trial in her own defense. She explained that when she accelerated her car forward, she intended to get the car off her brother's foot and was unaware the victim was in front of the vehicle. She said that she did not intend to kill the victim or hit her with the car.

Price stated that the victim sprayed her in the face with mace as she headed back to her car after the fight, causing burning in her eyes. After Price got into the vehicle, she claims that the victim entered, pulled her hair, and scraped her face, causing her contacts to come out. As Price's brother

pulled the victim out of the vehicle, Price reversed and saw the victim fall. Price testified, "and so I—I assumed she was just on the ground with my brother—or that's where I last seen her at." Then Price heard her brother yelling that the car was on his foot. Panicked, she depressed the gas pedal and cranked the steering wheel. She claimed that her car's power steering made it difficult to turn the steering wheel and that, in her experience, pressing the gas got it to turn. Price did not realize that the victim was in front of the car. Although the surveillance video showed that Price's view was unobstructed, she asserted that she could not see clearly because her eyes were burning from the pepper spray. Price then drove off with her brother but, after a block, returned upon realizing she had forgotten her phone and a set of keys. Price testified that a second altercation occurred before she drove to her mother's home, where her mother treated her eyes.

## B.    Other Defense Witnesses

Price's mother confirmed that Price complained of eye pain on the night of the incident. Price's brother testified that, by the time he grabbed the mace from the victim, all three of them had been "maced." He also stated that Price's car had mechanical issues, making it difficult to steer. The purchaser of Price's vehicle confirmed that the vehicle was difficult to steer when the power steering fluid was low. However, he and his son drove the car for eight months before taking it to a mechanic to address the issue.

## DISCUSSION

We review a challenge to the sufficiency of the evidence under the substantial evidence standard. We must determine whether substantial evidence supports a reasonable fact finder's conclusion that the prosecution proved the defendant's guilt beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) To do so, we view the entire record in the light

4

most favorable to the judgment to determine whether it contains substantial evidence. (*Id*. at pp. 576–577.) Substantial evidence must be reasonable, credible, and of solid value. (*Id*. at p. 576.) Substantial evidence includes " 'circumstantial evidence and any inferences drawn from that evidence.' " (*People v. Grant* (2020) 57 Cal.App.5th 323, 330.) We do not reweigh the evidence, nor do we resolve credibility issues or evidentiary conflicts. (*People v. Perez* (2018) 4 Cal.5th 1055, 1066; *People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Instead, we "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, 1186.) We consider whether " '*any* rational trier of fact could have found the essential elements of the [charged offenses] beyond a reasonable doubt.' " (*People v. Rich* (1988) 45 Cal.3d 1036, 1081.)

The trial court told the jury that the charge of assault with a deadly weapon was based solely on Price's act of driving in a forward, turning motion and striking the victim. Price contends that the record lacks substantial evidence that, consistent with the trial court's instructions, she "willfully committed an act with an awareness of facts that would lead a reasonable person to realize by its nature the act would probably and directly result in the application of physical force against another." We disagree. Construed in the light most favorable to the judgment, there is substantial evidence, including the video of the incident, that Price deliberately accelerated her car forward and turned right in the direction of the victim, who was visible to her.

In her testimony, Price admitted that she depressed the gas pedal and intended to drive forward because she knew the car was on her brother's foot. The video confirms that the victim was standing on the right side of the

vehicle where Price could have seen her from the driver's seat. The jury was entitled to reject Price's testimony that she was unable to see the victim due to mace in her eyes. The footage showed that, after allegedly being maced, Price was able to locate the door handle, enter and exit her car, shift between gears, reverse after the collision, and drive normally—even returning almost immediately to the victim's apartment complex, and ultimately driving home without issue. The jury could reasonably infer from this evidence that Price's eyesight was not significantly impaired. We note that the jury heard the recording of Price's custodial interview, in which she made statements that were inconsistent with the video surveillance footage, the victim's testimony, and Price's own trial testimony.

Likewise, the jury was not required to credit Price's testimony that she turned the car in the victim's direction because of difficulty with the power steering. While the new owner testified that the vehicle was difficult to steer when the power steering fluid was low, he also testified that he and his son drove the car for months without seeking to have it repaired. Moreover, as the Attorney General argues, difficulties with the power steering would have made the car harder to *turn*, not to drive straight. Nor was the jury required to credit Price's testimony that she turned to avoid hitting the victim's friend. The video shows that the friend was in the way only once Price started turning to the right, and that Price could have avoided everyone by driving straight or to the left.

For these reasons, we conclude that there is sufficient evidence to support the jury's finding that Price willfully and knowingly committed assault with a deadly weapon. Given the scope of our review, " '[i]t is of no consequence that the jury believing other evidence, or drawing different

6

inferences, might have reached a contrary conclusion.' " (*People v. Castro* (2006) 138 Cal.App.4th 137, 140.)

## DISPOSITION

The judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
SIGGINS, J. *

---

\* Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.