[No. B212967. Second Dist., Div. Five. Jan. 11, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
SANTOS DOMINGUEZ, Defendant and Appellant.

## COUNSEL

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Scott A. Taryle and E. Carlos Dominguez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KRIEGLER, J.—Defendant and appellant Santos Dominguez was convicted by jury in count 2 of felony false imprisonment of L.G. (L.), a child under the age of 14, and in count 3 of misdemeanor false imprisonment of J.S. (J.) (Pen. Code, §§ 236, 237).[1] Defendant was sentenced to state prison for the upper term of three years on the felony false imprisonment charge and a concurrent term of 365 days in county jail on the misdemeanor.

In his timely appeal from the judgment, defendant argues the evidence is insufficient to support a conviction for either felony or misdemeanor false imprisonment of L. in count 2. He also argues the evidence is insufficient to support the conviction of misdemeanor false imprisonment of J. in count 3. We affirm.

## FACTS

*Prosecution Evidence*

Four-year-old L. was playing with her six-year-old cousin, J., in the ground floor apartment L. shared with her family on Sepulveda Boulevard on February 17, 2008. J. lived in the same building in a second floor apartment with her mother. The girls said they were going to play with a little friend, who lived on the second floor of the complex.

J. saw defendant by the friend's apartment. Defendant asked J. her name and then twice asked, "Where's your mom?" He hugged both J. and L. J. said her mom was in the house. Defendant said he wanted J. to come to a restaurant. She asked if he had money to take them to the restaurant. He said he had money. Defendant picked up L. and carried her toward the mailbox on the ground floor.

J. followed as defendant carried L. downstairs to the first floor, because she did not want to leave defendant alone with L. L.'s face was red as defendant carried her down the stairs. Defendant walked out of the apartment security gate, which is located near the mailbox. J. stayed inside the gate. Defendant returned inside the gate and again hugged both girls.

Defendant saw another man on the first floor and stopped. Defendant, who at this time was carrying L. on his shoulders, put her down.

J. and L. went to J.'s apartment and spoke with J.'s mother. Over the course of the next hour and a half, J. provided her mother with information

---

[1] All further statutory citations are to the Penal Code unless otherwise stated.

about what happened. Her mother noticed that J. looked nervous and L. looked scared and had a very pale complexion. L. kept grabbing her mouth. J. said a man grabbed L. and wanted to take her away. J. said the man was not a relative. He had hugged her and asked where their parents were and if they had parents, and said he was taking them to eat at a restaurant. J. repeatedly hugged and kissed her cousin in front of her mother.

Later that day, J. saw defendant outside the apartment and identified him to her mother and uncle. She later saw defendant at a Mobil gas station and identified him for the police.

Officer Amanda Morrow contacted defendant at the Mobil gas station at Sepulveda and Nordhoff on February 17, 2008, where defendant was identified by J. Defendant told the officer he wanted to get the two little girls away from their abusive parents and get them some food.

Detective Donald Goosens met with J. on February 19, 2008. Detective Goosens estimated the distance between the stairwell where J. had been playing and the front gate was 60 to 70 feet.

*Uncharged Prior Acts*

E.C. (E.), born in December 1990, lived with her family in 2002 on Roscoe Boulevard. Defendant lived on the premises in a converted garage. E. went to the garage on occasion to watch television. On one occasion she felt defendant's hand on her breast over her clothing, although she could not tell if the touching was accidental or on purpose.

K.C., E.'s sister, born in July 1995, also went to the converted garage where defendant lived. Defendant touched her breast under her clothing and kissed her on the lips two or three times when she was six or seven years old.

*Defense*

Defendant lived in apartment No. 29 in the building on Sepulveda where the charged offenses took place on February 17, 2008. He never saw the two little girls at the apartment before that date. He did not pick up L. and never touched her.

On February 17, defendant was leaving when he saw the girls headed toward the mailboxes. The security gate was propped open with a shopping cart. The girls said they were going outside the gate to play. Defendant told them to stay inside. He then left to get a haircut.

Defendant did not ask the girls if they wanted to go to a restaurant. The father of one of the girls beat him up at the gas station later that day. Defendant called the police on his cell phone for help because he had been beaten. He waited at the gas station for the police, who immediately placed him in handcuffs when they arrived. Defendant never saw J. point at him. He denied telling a police officer he was going to take the girls to a restaurant.

## DISCUSSION

*Sufficiency of Evidence of Felony False Imprisonment As to L.*

Defendant first argues there is insufficient evidence to support the verdict of felony false imprisonment of L. in count 2. He further argues that if we determine that the evidence is insufficient to support the felony charge, we should also hold the evidence is insufficient to support a lesser charge of misdemeanor false imprisonment of L. We reject the first contention, and need not address the second.

### A. Standard of Review

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618], citing *People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781].) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181 [24 Cal.Rptr.3d 112, 105 P.3d 487].)

### B. Elements of False Imprisonment

■ "False imprisonment is the unlawful violation of the personal liberty of another." (§ 236.) False imprisonment is a felony if "effected by violence,

menace, fraud, or deceit . . . ." (§ 237, subd. (a); *People v. Fernandez* (1994) 26 Cal.App.4th 710, 717 [31 Cal.Rptr.2d 677].) " 'Force is an element of both felony and misdemeanor false imprisonment. Misdemeanor false imprisonment becomes a felony only where the force used is greater than that reasonably necessary to effect the restraint. In such circumstances the force is defined as "violence" with the false imprisonment effected by such violence a felony.' (*People v. Hendrix* (1992) 8 Cal.App.4th 1458, 1462 [10 Cal.Rptr.2d 922].)" (*People v. Castro* (2006) 138 Cal.App.4th 137, 140 [41 Cal.Rptr.3d 190].) False imprisonment does not require "confinement in some type of enclosed space." (*People v. Fernandez, supra,* 26 Cal.App.4th at p. 718.)

The amount of force required to constitute a kidnapping or a false imprisonment of an infant or young child was addressed in *In re Michele D.* (2002) 29 Cal.4th 600 [128 Cal.Rptr.2d 92, 59 P.3d 164] (*Michele D.*). In *Michele D.*, the minor, her friend, and the friend's infant child were in a store. When the minor and her friend were briefly separated, the minor took the infant without permission. The minor was found by the juvenile court to have violated section 207, subdivision (a), by kidnapping the infant. The juvenile court also found the infant was under the age of 14 and was kidnapped with the intent to permanently deprive her parent of custody under section 667.85. (*Michele D., supra,* at pp. 603–605.)

■ The Supreme Court "granted review to resolve the issue of what quantum of force, if any, must be shown to sustain a conviction for kidnapping when the victim is an unresisting infant or child." (*Michele D., supra,* 29 Cal.4th at p. 603.) The court held "that the amount of force required to kidnap an unresisting infant or child is simply the amount of physical force required to take and carry the child away a substantial distance for an illegal purpose or with an illegal intent." (*Ibid.*)

In the ordinary kidnapping case, the amount of force required is "something more than the quantum of physical force necessary to effect movement of the victim from one location to another." (*Michele D., supra,* 29 Cal.4th at p. 606.) However, even if force is not used in the conventional sense, a wrongful intent in carrying off an infant is sufficient to constitute force for purposes of the kidnapping statute. (*Ibid.*) "The fact that the Legislature may not have considered every factual permutation of kidnapping, including the carrying off of an unresisting infant, does not mean the Legislature did not intend for the statute to reach that conduct." (*Ibid.*)

In reaching its conclusion, the *Michele D.* court referred to its decision in *People v. Oliver* (1961) 55 Cal.2d 761 [12 Cal.Rptr. 865, 361 P.2d 593] (*Oliver*), in which the defendant was convicted of kidnapping under facts showing the victim, a baby, went willingly with the defendant. In order to

avoid the possibility of an unjust result if the kidnapping statute were given a literal interpretation, the Supreme Court held the statute should be given a "sensible construction," and the element of force is established "if the taking and carrying away is done for an illegal purpose or with an illegal intent." (*Id.* at p. 768.)

*Michele D.* noted that dicta in *Parnell v. Superior Court* (1981) 119 Cal.App.3d 392, 402–403, footnote 3 [173 Cal.Rptr. 906] (*Parnell*) and *People v. Rios* (1986) 177 Cal.App.3d 445, 451 [222 Cal.Rptr. 913] (*Rios*) had interpreted *Oliver* as standing for the proposition that the "force requirement, like the consent requirement, is relaxed or eliminated in a kidnapping that involves an infant or small child." (*Michele D., supra,* 29 Cal.4th at p. 608.) The Supreme Court held "the *Parnell-Rios* construction of *Oliver* has merit because the consent and force elements of kidnapping are clearly intertwined. [Citation.] [And if, as in *Oliver*,] the child victim went 'willingly' with defendant, the implication is that force was not used against him. Thus, our holding in *Oliver*—that, where the victim by reason of youth or mental incapacity can neither give nor withhold consent, kidnapping is established by proof that the victim was taken for an improper purpose or improper intent—was reasonably extended in *Parnell* and *Rios* to encompass situations in which, because of the victim's youth, there is no evidence the victim's will was overcome by force." (*Michele D., supra,* at p. 609.)

"That said, it remains true that no California case has yet defined the quantum of force necessary to establish the force element of kidnapping in the case of an infant or small child. We formulate that standard as follows: the amount of force required to kidnap an unresisting infant or child is simply the amount of physical force required to take and carry the child away a substantial distance for an illegal purpose or with an illegal intent." (*Michele D., supra,* 29 Cal.4th at p. 610, fn. omitted.)

We assume the discussion of force in the context of a kidnapping prosecution in *Michele D.* applies equally to the force requirement of false imprisonment. This assumption appears beyond reasonable dispute, as *Rios,* a false imprisonment case, was cited with approval in *Michele D., supra,* 29 Cal.4th at pages 608–609.

### C. *Analysis*

██ The element of force in the movement of four-year-old L. is satisfied under the *Michele D.* guidelines: Defendant moved an unresisting L. a substantial distance for an illegal purpose or with an illegal intent. ██ Upon first seeing the girls, defendant hugged both L. and J. Defendant had no right to touch the girls, and an unsolicited hug of young children,

whose parents are not in the immediate vicinity, could certainly be construed as a battery. (*People v. Pinholster* (1992) 1 Cal.4th 865, 961 [4 Cal.Rptr.2d 765, 824 P.2d 571] [any harmful or offensive touching is a battery]; *People v. Mesce* (1997) 52 Cal.App.4th 618, 636 [60 Cal.Rptr.2d 745] [the least touching may be a battery].) Defendant, a complete stranger, continued the offensive touching by picking up L. and carrying her to a location just beyond the security gate of the apartment building, a distance of up to 70 feet. Defendant had no legitimate reason to be in contact with L. or to suggest he would take either girl to a restaurant.

Based on defendant's prior molestations of E. and K.C., the jury could infer defendant had a disposition for molesting young girls, indicating the movement of L. was for an illegal purpose or with an illegal intent under *Michele D.* Considering the age of L., the distance traveled, and the fact defendant picked her up and carried her from a place of apparent safety within the apartment complex to a location beyond its security gate, the necessary element of a forceful violation of her personal liberty was satisfied. (See *People v. Castro, supra*, 138 Cal.App.4th at pp. 140–142 [sufficient evidence of felony false imprisonment where defendant made sexually suggestive comments to a 16-year-old girl on the street and grabbed her arm and pulled her toward him].)

The use of force establishes a false imprisonment. In order to elevate the offense to a felony, there must be substantial evidence that the false imprisonment was "effected by violence, menace, fraud, or deceit . . . ." (§ 237, subd. (a).) The evidence is sufficient to establish that defendant relied upon menace, and fraud or deceit.

Menace is a threat of harm expressed or implied by words or act. (*People v. Wardell* (2008) 162 Cal.App.4th 1484, 1490 [77 Cal.Rptr.3d 77]; *People v. Reed* (2000) 78 Cal.App.4th 274, 280 [92 Cal.Rptr.2d 781].) A threat of harm to four-year-old L. can be reasonably inferred from an unauthorized hug, the questions about the girls' parents, and the suggestion that defendant, a complete stranger, intended to remove L. from the safe confines of a secure apartment building to a restaurant. The jury could also infer that L. understood the threat to her presented by these circumstances, as evidenced by her red face as she was carried by defendant and her scared look and pale complexion after the incident.

We also hold there is substantial evidence of fraud or deceit in defendant's statement that he wanted to take J. to a restaurant. The jury could reasonably infer the restaurant statement was a ruse to entice both girls to leave the apartment structure without creating a fuss, but that defendant had no intention of actually taking them to a restaurant. Considering that defendant

put down L. when another adult came upon the scene, it is fair to infer the idea of going to a restaurant was merely a part of defendant's scheme to remove the girls from the apartment complex without detection.

Having concluded that substantial evidence supports the conviction of felony false imprisonment, we need not address defendant's further argument challenging the sufficiency of the evidence of misdemeanor false imprisonment as to L.

*Sufficiency of the Evidence of Misdemeanor False Imprisonment As to J.*

Defendant also argues the evidence is insufficient to support the misdemeanor false imprisonment conviction involving J. Defendant contends J. voluntarily decided to follow along as defendant carried L. downstairs, without any use of force on his part. We disagree.

■ "Again, the essential element of false imprisonment is restraint of the person. Any exercise of express or implied force which compels another person to remain where he does not wish to remain, or to go where he does not wish to go, is false imprisonment. (*People v. Fernandez*[, *supra,*] 26 Cal.App.4th 710, 717 . . . .)" (*People v. Bamba* (1997) 58 Cal.App.4th 1113, 1123 [68 Cal.Rptr.2d 450].) "Consent of the victim is no defense where the consent is induced by coercion or deception or where the victim is incapable of consenting due to unsoundness of mind or tenderness of years. (See Perkins, Criminal Law (1957) p. 131.)" (*Parnell, supra,* 119 Cal.App.3d at pp. 409–410.)

There is substantial evidence that defendant's conduct compelled J. to go to a place she did not wish to go. She and L. had walked upstairs to see a friend. Defendant's conduct caused J. to leave the second floor and walk downstairs, a distance of up to 70 feet, as defendant appeared to be in the process of walking off with L. These facts qualify as confinement for purposes of false imprisonment. The remaining question is whether the facts also constitute substantial evidence of force as defined in the case law.

■ "An express or implied threat of harm does not require the use of a deadly weapon or an express verbal threat to do additional harm. Threats can be exhibited in a myriad number of ways, verbally and by conduct." (*People v. Aispuro* (2007) 157 Cal.App.4th 1509, 1513 [69 Cal.Rptr.3d 585].) False

imprisonment may be committed by words or acts and merely by operation upon the will of the individual or by personal violence, or both. (*People v. Agnew* (1940) 16 Cal.2d 655, 660 [107 P.2d 601]; *People v. Zilbauer* (1955) 44 Cal.2d 43, 51 [279 P.2d 534]; *People v. Reed, supra*, 78 Cal.App.4th at p. 280.)

The incident began with defendant, a complete stranger, hugging the two girls on the second floor of the apartment. Defendant asked about the girls' parents, from which the jury could infer he was concerned about his prospects of safely taking the girls from the apartment without being observed. After having been subjected to defendant's unwarranted touching, defendant told J. he wanted to take her to a restaurant with him. Indicating her suspicion of this stranger, J. asked if defendant had money. Next, J. saw defendant pick up L. and carry the red-faced L. downstairs. J. followed because she did not want L. to be alone with defendant.

Confronted with a confusing situation in which she was subjected to an unwarranted hug from a person she did not know, was enticed to go to a restaurant, and saw her younger cousin being forcibly carried away, J. followed defendant out of fear for her cousin's safety. A reasonable trier of fact could conclude J.'s will was overcome to the point she felt compelled to move downstairs when confronted with these facts.

■ The express force used on L., in conjunction with the attendant circumstances of defendant's conduct, had the implied effect of forcing J. to leave the second floor of the apartment complex and follow defendant to the ground floor. The continuing threat to L. was sufficient to constitute implied force upon J. In circumstances such as these, the express use of force upon one person can constitute the implied use of force upon another.

While J. may have had choices other than following defendant downstairs, such as going for her mother or screaming, it does not mean that her decision to follow defendant as he walked off with her cousin was consensual in the legal sense. What an adult might have done under these circumstances is of no moment in determining whether J. was the victim of a false imprisonment. As a six year old protective of a younger relative, J. could reasonably conclude she had no choice but to follow along out of fear for L.'s safety. This is substantial evidence that her will was overcome and she was, in effect, forced to move to a place she did not intend to go.

## DISPOSITION

The judgment is affirmed.

Armstrong, Acting P. J., and Mosk, J., concurred.

On January 19, 2010, the opinion was modified to read as printed above.