Filed 11/20/15  P. v. Lopez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>SERGIO LOPEZ,<br><br>　　Defendant and Appellant. | D068727<br><br><br>(Super. Ct. No. SWF1102618) |

APPEAL from a judgment of the Superior Court of Riverside County, Patrick F. Magers, Judge.  (Retired Judge of the Riverside Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Sergio Lopez of 10 counts of robbery (Pen. Code, section 211[1]), five counts of burglary (§ 459), and five counts of felony false imprisonment (§ 236) in connection with five robberies in Riverside County between January and April 2011. On appeal from the judgment of conviction, Lopez argues the trial court erred in instructing the jury that it did not need to consider the lesser included offense of false imprisonment without violence or menace unless it acquitted Lopez of the greater offense. We conclude the trial court erred under *People v. Kurtzman* (1988) 46 Cal.3d 322 (*Kurtzman*). However, the error was harmless, and we affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

On October 21, 2011, the People indicted Lopez on 226 counts relating to a string of robberies in Riverside County. The People filed an amended 75-count complaint on February 1, 2013, bifurcating the remaining charges in a separate case. On July 31, 2014, near the end of trial, the People filed an Amended Information, alleging 69 counts relating to 19 robberies at hair salons, yogurt and sandwich shops, and clothing stores between November 2010 and March 2011. The People charged Lopez with robbery and burglary in connection with each incident. It also charged Lopez with kidnapping in connection to some of the incidents and false imprisonment in connection with others. At trial, the People presented evidence of a similar pattern of robberies, in which a masked

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    To avoid repetition, we address facts specific to the appeal in the discussion section.

man in a hooded sweatshirt entered a business operated by female employees, pointed a gun, asked for the cash drawer or safe, directed the employees at gunpoint to go to a back room, and left after a short period of time.  Only two robberies, described below, are relevant to this appeal.

On January 21, 2011, a masked man in a hooded sweatshirt entered Panache Beauty Salon in Riverside.  He pointed a gun and directed everyone to walk to the back of the salon.  He told stylist Kaley Tearnen to "give me the money you have, or I'm going to start shooting people."  He warned her not to try to escape, saying someone was watching from the outside.  Tearnen walked to the front of the salon, removed the cash drawer, and brought it back to him.  The man asked for the rest of the money and the safe, but stylist Sara Nagata told him there was no safe.  The man pointed his gun and instructed everyone to go inside a bathroom at the back of the salon.  Tearnen and Nagata believed he would shoot if they did not follow his instructions.  Nagata pulled the bathroom door shut from the inside and locked it to prevent him from entering.  They came out when they heard him leave.  Nagata and Tearnen testified for the prosecution at trial.

On April 8, 2011, a masked man in a hooded sweatshirt entered Bed Headz Hair Salon in Temecula.  Salon owner Alice Khoury initially believed the holdup was a joke, but she became "startled" and "concerned" when the man held up a gun, said "I'm [fucking] serious," and ordered the women to go to a room at the back of the salon.  Stylists Jennifer Polehonka and Linda May were afraid he would shoot if they did not comply.  He asked who was in charge, demanded money from the register, and asked if

3

there was a safe. He warned the women not to call the police, saying they were being watched from outside. Angry that Khoury's daughter kept looking at him, he yelled at the women to look forward and closed the door to the room. Khoury ran down the fire hall, informed her neighbor of the robbery, and returned to the back room. She later identified Lopez in a lineup and at court. Khoury, May, and Polehonka testified for the prosecution at trial.

Lopez's main defense was mistaken identity. His attorney argued in closing that there were "numerous discrepancies" in how the prosecution's witnesses identified the perpetrator, including in hair color, eye color, skin color, build, and height. She suggested that the stress of being robbed at gunpoint may have influenced the accuracy of witness identification. She further argued that the police zeroed in on Lopez prematurely, at the expense of following other leads.

The court instructed the jury on lesser included offenses, including the lesser included offense of false imprisonment without violence or menace, relevant here. On August 11, 2014, the jury reached verdicts on 28 counts involving robberies at seven businesses but deadlocked on all remaining counts. The jury convicted Lopez of robbery, burglary, and felony false imprisonment at Bed Headz Hair Salon on April 8, 2011 (counts 1-7); robbery and burglary at Yog-N Frozen Yogurt on January 18, 2011 (counts 21-22); robbery and burglary at Ramona Cleaners on January 28, 2011 (counts 28-29); robbery, burglary, and felony false imprisonment at Panache Beauty Salon on January 21, 2011 (counts 53-58); and robbery and burglary at Subway on February 13, 2011 (counts 67-69). The jury acquitted Lopez of robbery and burglary at California Cuts on January

4

7, 2011 (counts 18-19). It also acquitted Lopez of robbery, burglary, felony false imprisonment, and false imprisonment without violence or menace at Fashion Avenue on February 11, 2011 (counts 30-34).

On September 2, 2014, the court denied Lopez's motion to dismiss the counts where the jury was unable to reach a verdict, stating "this was a very, very, very strong prosecution case" and finding a reasonable probability of conviction on retrial. The court sentenced Lopez to a total of 14 years in state prison. It stayed sentencing on the false imprisonment charges under section 654.

Lopez filed a timely notice of appeal. He appeals only one issue: Lopez argues the trial court erred by instructing the jury not to consider the lesser included offense of false imprisonment without violence or menace unless it acquitted Lopez of the greater offense of felony false imprisonment. Absent this error, Lopez contends, it was reasonably probable the jury would have convicted him of only misdemeanor false imprisonment at Bed Headz Hair Salon and Panache Beauty Salon. [3]

DISCUSSION

In *Kurtzman*, *supra*, 46 Cal.3d at pp. 324-325, the Supreme Court held that California law "simply restricts a jury from *returning a verdict* on a lesser included offense before acquitting on a greater offense and does not preclude a jury from

---

[3]  Lopez did not object to the trial court's instructions. However, "to the extent he is claiming that the instruction was erroneous (and not merely that the court should have clarified certain terms within it), his claims are reviewable under section 1259." (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 475; see *People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012; Pen. Code, § 1259.)

*considering* lesser offenses during its deliberations."  In *Kurtzman*, "the trial court erred in instructing the jury not to 'deliberate on' or 'consider' voluntary manslaughter unless and until it had unanimously agreed on second degree murder."  (*Id*. at p. 335.)  Pursuant to *Kurtzman*, "a trial court should not tell the jury it must first unanimously acquit the defendant of the greater offense before deliberating on or even considering a lesser offense."  (*People v. Dennis* (1998) 17 Cal.4th 468, 536, citing *Kurtzman*, *supra*, 46 Cal.3d at p. 335.)  CALCRIM No. 3517, the Bench Notes of which refer to *Kurtzman*, instructs a jury:  "It is up to you to decide the order in which you consider each crime and the relevant evidence."[4]

Before deliberations, the trial court gave the jury oral instructions on each of the charged offenses and on applicable lesser included offenses.  When the jury went to the deliberation room, it received a written set of instructions from the court with relevant sections of CALCRIM.  Among the written instructions was a version of CALCRIM No. 3517, with the language above.   However, the trial court's oral instruction on lesser included offenses differed significantly from its written instructions.  The court stated:

> "The lesser crimes only become relevant if you find the defendant
> not guilty of the charged crime, which is the greater crime.  You find
> the defendant not guilty of the greater crime, then you can go down
> and consider whether or not he is guilty of the lesser crime.  So that's
> how that works."

---

[4]     The Supreme Court has noted the "inherent difficulty in demonstrating prejudice" from a *Kurtzman* error.  (*People v. Fields* (1996) 13 Cal.4th 289, 309 fn. 7.)  Although the doctrine has existed for more than a quarter century, we have not uncovered a single reported decision in which a court has reversed on grounds that a *Kurtzman* instructional error was prejudicial.

6

With regard to false imprisonment, the court explained:

> "[I]f the jury is unanimous that the defendant is guilty of a false imprisonment with respect to a particular count, then you do not have to consider the lesser-included. The false imprisonment has one lesser-included. . . . [[¶] . . . [¶] So, again, if you find the defendant guilty of the primary offense, greater offense of false imprisonment, then you don't have to consider the lesser-included. But if you find him not guilty of the greater offense, false imprisonment, then you would go down and deliberate whether or not he is guilty of the lesser offense of false imprisonment without violence and menace."

The trial court's oral instruction that the jury should not "consider" or "deliberate" on false imprisonment without menace before acquitting Lopez of felony false imprisonment constituted error. (*Kurtzman*, *supra*, 46 Cal.3d at p. 335; see, e.g., *People v. Perez* (1989) 212 Cal.App.3d 395, 399 (*Perez*) [finding *Kurtzman* error where court told jury it "should not 'consider' lesser offenses before acquitting on the second degree murder count"]; *People v. Benally* (1989) 208 Cal.App.3d 900, 912 (*Benally*) [finding *Kurtzman* error where court told jury to " 'consider' the lesser charge only after it had reached the unanimous opinion that [the defendant] was not guilty of the greater offense"].)

However, *Kurtzman* requires reversal only where it is "reasonably probable that a different result would have occurred had the contested instructions not been given." (*Kurtzman*, *supra*, 46 Cal.3d at p. 335 [applying the standard of prejudice adopted in *People v. Watson* (1956) 46 Cal.2d 818, 836].) The Supreme Court concluded the error harmless in *Kurtzman*, despite the trial court's repeated and strict admonishment to the jury "not to 'deliberate on' or 'consider' " the lesser offense unless and until it had unanimously agreed on the greater. (*Kurtzman*, at p. 335.) Courts applying *Kurtzman*

7

have held that error is harmless where the jury deliberated on lesser offenses despite the erroneous instruction (*Benally*, *supra*, 208 Cal.App.3d at pp. 912-913) and where substantial evidence supports conviction on the greater offense (*Perez*, *supra*, 212 Cal.App.3d at p. 399).

Here, as in *Kurtzman*, the instructional error was harmless. The trial court provided the jury with written instructions that contained a correct statement of the law. The court offered to provide additional copies of the written instructions if needed. Twice, the court advised the jury to consider the instructions together "as a whole." The jury took the written instructions into deliberations and asked for two additional copies, suggesting reliance on the written instructions.

Critically, as in *Kurtzman*, the record reflects that the jury *did* consider the lesser included offense of false imprisonment without violence or menace. (*Kurtzman*, *supra*, 46 Cal.3d at p. 335.) During deliberations, the jury asked the stenographer to reread the testimony of Khoury, who testified about the Bed Headz robbery. The jury also asked the court to further explain the concept of "menace," suggesting deliberation on the lesser offense. The court responded by directing the jury to CALCRIM No. 1240, included among the written instructions, which defines "menace" and describes false imprisonment without violence or menace as a lesser included misdemeanor. On this record, it is obvious the court's erroneous oral instruction did not restrict the scope of the jury's deliberations on the lesser included offense. (See, e.g., *Benally*, *supra*, 208 Cal.App.3d at p. 912 [*Kurtzman* error harmless where jury's questions evinced deliberation on the lesser offense]; *Perez*, *supra*, 212 Cal.App.3d at p. 400 [error

8

harmless given "the absence of any indication that the statement thwarted the continuation of an appropriately full pattern of deliberations"].)

Absent the instructional error, Lopez argues it was reasonably probable the jury would have convicted him of only misdemeanor false imprisonment at Bed Headz Hair Salon and Panache Beauty Salon. We disagree. The evidence against Lopez on the felony false imprisonment charges was substantial. At Bed Headz, Khoury initially thought the robbery was a joke. She became startled and concerned for her safety, however, when Lopez held a gun, said he was " '[fucking] serious' " and ordered everyone in the salon to the back. May and Polehonka went to the back with Khoury; both were afraid Lopez might otherwise shoot. At Panache, Lopez directed Nagata and Tearnen at gunpoint to a bathroom at the back of the salon. Both believed Lopez might shoot if they did not comply. Nagata pulled the door shut and locked it to keep Lopez from entering.

Directing Khoury, Polehonka, May, Nagata, and Tearnen at gunpoint to the back of the salons rises to the felony level. "False imprisonment is a misdemeanor unless it is 'effected by violence, menace, fraud, or deceit,' in which case it is a felony." (*People v. Wardell* (2008) 162 Cal.App.4th 1484, 1490 (*Wardell*).) "Menace is a threat of harm expressed or implied by words or act." (*People v. Dominguez* (2010) 180 Cal.App.4th 1351, 1359; see CALCRIM No. 1240.) "An express or implied threat of harm does not require the use of a deadly weapon or an express verbal threat to do additional harm. Threats can be exhibited in a myriad number of ways, verbally and by conduct." (*People v. Aispuro* (2007) 157 Cal.App.4th 1509, 1513.) "[A] jury properly may

9

consider a victim's fear in determining whether the defendant expressly or impliedly threatened harm." (*People v. Islas* (2012) 210 Cal.App.4th 116, 127.) Where, as here, victims are held at gunpoint and fear being shot if they tried to leave, there is substantial evidence of false imprisonment with violence or menace. (See, e.g., *Wardell*, at p. 1491 [defendant held gun and ordered victim from room to room]; *People v. Newman* (2015) 238 Cal.App.4th 103, 109 [defendant yelled "Nobody is going anywhere" while pointing a gun in the family's direction during a robbery].)

Lopez points to Khoury's trial testimony, suggesting that she did not take the robbery seriously and laughed when he used "weird words" to tell them they were being watched. Lopez also points to Nagata's testimony that she, not Lopez, locked the bathroom door at Panache. Neither affects the analysis. While initially "it just all seemed like a big joke" to Khoury, she explained that "when [Lopez] ordered us to get in the back and he did point the gun, he did tell us it was a [fucking] robbery or hold up, . . . that's when I became concerned for my safety and my clients' safety and my daughter's, my stylists', then I took it all serious."[5] At Panache, both Nagata and Tearnen thought Lopez would shoot if they did not go inside the bathroom. There is no indication they locked themselves in the bathroom voluntarily. The fact that Nagata was the one to

---

[5] Khoury testified that she initially believed the gun to be fake. However, Lopez never used this testimony to suggest lack of menace. His counsel argued in closing that the victims' belief that the gun was *real* clouded their identification: "When people are under stress, it clouds their judgment. . . . Is it stressful to have a gun that you believe is real held to you, to be in a situation where you're being robbed, especially if it's the first time? Sure. Is that something that could influence someone's accuracy in relaying the information that they have? Yes."

lock the door underscores, rather than negates, the implied threat of physical harm presented by Lopez pointing a gun at them.

In sum, we conclude the trial court's error in its oral instruction to the jury was harmless. The record reflects that the jury did deliberate on the lesser offense, and there is substantial evidence to support its convictions of felony false imprisonment at Bed Headz Hair Salon (counts 4, 5, and 6) and Panache Beauty Salon (counts 56 and 57).

## DISPOSITION

The judgment is affirmed.


HALLER, Acting P. J.

WE CONCUR:


McDONALD, J.


AARON, J.