Filed 11/29/22 P. v. Fuentes CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C095096 |
| Plaintiff and Respondent, | (Super. Ct. No. 21F2443) |
| v. | |
| DAVID EMIL FUENTES, | |
| Defendant and Appellant. | |

A jury convicted defendant David Emil Fuentes of corporal injury of a coparent with a prior conviction (Pen. Code, § 273.5, subds. (a), (f), count 1), false imprisonment by violence or menace (Pen. Code, §§ 236/237, subd. (a), count 2), and two counts of misdemeanor child endangerment (Pen. Code, § 273a, subd. (b), counts 3 & 4). In a bifurcated bench trial, the trial court found defendant had suffered a prior strike conviction. The court denied defendant's motion to strike the prior conviction for purposes of sentencing under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. The court sentenced defendant to the middle term of four years on count 1, doubled to eight years for the prior strike, plus eight months consecutive on count 2 (one-third of the

1

middle term), doubled by the strike to one year four months, and six months in jail on counts 3 and 4 to be served concurrently with the sentence on count 1, for an aggregate sentence of nine years four months.

Defendant contends on appeal that the prosecution violated *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*) by failing to disclose, till nearly the end of the trial, that Deputy Garrett Dorn would testify to additional statements defendant made at the scene that he was concerned that the victim, B.P., was suicidal and asked Dorn for a welfare check on his family. We conclude there was no *Brady* violation because this information was disclosed by the prosecutor before Dorn testified, giving defense counsel an opportunity to cross-examine Dorn on the subject. Further, defendant's statements to Dorn were known to defendant and could have been raised in cross-examination whether or not the prosecution disclosed them.

Defendant also contends that the trial court erred in failing to give the jury a unanimity instruction, because count 2 for false imprisonment involved two separate acts where defendant wrapped the victim in a "bear hug." We disagree. A unanimity instruction is not required where distinct acts are part of the same continuing course of conduct. Here, both acts were part of a course of conduct where defendant maintained control over B.P. and occurred in the same place within moments of each other. Also, defendant presented the same defense to both acts.

The judgment is affirmed.

## STATEMENT OF FACTS

On April 5, 2021, defendant asked B.P. to give him a ride to his parents' house. B.P.'s child with defendant and B.P.'s daughter from a different relationship were in the back seat. At that point, defendant and B.P. were broken up. During the ride, B.P. and defendant began to argue. The loss of another child they had together came up during the argument. Defendant mentioned that he did not want anything to happen to the children

in the car or B.P., because he could not take another loss. B.P. was upset and said words to the effect that she might as well kill herself. B.P. was suicidal.

When they arrived at defendant's parents' home, defendant's father came out of the house and saw defendant "bear hugging" B.P. Defendant's mother was telling defendant to let B.P. go. Defendant's father told defendant to let B.P. go. Defendant let B.P. go, walked away, and kicked B.P.'s car as he went by, causing damage (that he paid to repair). Defendant's father called 911.

Dorn responded to the 911 call. He found defendant two houses away, acting erratically and yelling. Dorn handcuffed defendant for "[o]fficer safety." When defendant was handcuffed, he said that "nothing happened" and "[i]t was just an argument."

When Dorn interviewed B.P. at the scene, she related a different version of the events from her trial testimony. She told Dorn, defendant was hitting the dashboard of the car and yelling as she was driving him. When they arrived and got out of the car, defendant grabbed her in a bear hug, pinned her arms to her sides, and threw her on the ground, injuring her. Defendant then picked her up and dragged her over to another car. B.P. said that defendant threw her on top of the car and held her there in a bear hug. B.P. reported that she told defendant several times to let her go.

When Dorn then told defendant he would be charged with domestic violence, defendant said, "I shoved her. That's not domestic violence. I threw her on the car because I love her. I know I messed up. I shoved her."

According to B.P.'s trial testimony, when they got to defendant's parents' house, defendant tried to take the car keys from her and pushed her. B.P. fell over and scraped her elbow. Defendant picked B.P. off the ground. Defendant was "bear hugging" her. Defendant's mother came out holding a bat and yelling. Defendant carried B.P. away from the car and sat her on his father's car.

3

This testimony was consistent with a description of the events that B.P. conveyed in a letter she wrote to the district attorney on April 26, 2021, seeking "to shine some light on our case" and maintaining that "I'm just as at fault as David is."

At trial, Dorn testified that, at a prior hearing, he had testified that defendant made only the two statements quoted above. At the time, Dorn did not recall defendant making any other statements. Since his prior testimony, as he listened to other witnesses testify, Dorn said he remembered defendant making additional statements. Dorn remembered that defendant said B.P. in the past was suicidal. Dorn also remembered that, when he was transporting defendant to jail, defendant requested a welfare check on B.P. Dorn did not include defendant asking for a welfare check in his police report, because it was irrelevant. Dorn had already asked B.P. if she was suicidal and she said she was not, stating that she had two kids.

## DISCUSSION

### I

### *Brady Violation*

Defendant contends that the prosecution violated *Brady* by failing to disclose statements he made to Dorn at the scene expressing concern that B.P. was suicidal. We disagree.

### *A. Further Background*

Prior to opening statements, on July 15, 2021, the trial court conducted a hearing to address whether defendant's statements to Dorn violated *Miranda v. Arizona* (1966) 384 U.S. 436.

Dorn testified that when he first handcuffed defendant, defendant said that "it was just an argument." When Dorn told defendant he was under arrest for domestic violence and was transporting him to jail, defendant said, "I shoved her; that's not domestic violence. I threw her on the car and I hugged her because I love her. I know I messed up. I shoved her." Dorn testified that defendant did not make these statements in

4

response to anything Dorn said or did. Other than this statement, during the 15-minute ride to the jail, Dorn talked to defendant only to obtain his date of birth and place of residence. Finding no evidence that defendant had been interrogated, the trial court ruled evidence of defendant's statements to Dorn were admissible.

On July 16, 2021, with all prosecution witnesses having already testified except Dorn, the prosecutor informed defense counsel that Dorn now recalled more statements that defendant made on the way to jail. According to the prosecutor, Dorn remembered that defendant was erratic, crying, fidgety, and talking a mile a minute in between periods of complete silence. Defendant said that the loss of a child was hard on B.P. and she was suicidal. Defendant asked for a welfare check on his family. However, Dorn had asked B.P. if she wanted to hurt herself or others and she said, "no. I have kids."

On July 19, 2021, defense counsel filed a motion to dismiss under *Brady*. On July 20, 2021, the trial court issued a tentative ruling denying the motion and, after hearing argument from the parties, adopted its tentative ruling. The court found that defense counsel had shown that Dorn's new statements were favorable to defendant, because they aligned with B.P.'s trial testimony and supported the defense theory that defendant was trying to stop B.P. from hurting herself or the children. Therefore, the trial court focused on whether late disclosure was prejudicial to defendant. The court concluded that defendant was not prejudiced, relying on *People v. Mora and Rangel* (2018) 5 Cal.5th 442 (*Mora and Rangel*). Dorn had yet to testify and was subject to cross-examination where the defense had the ability to use the new information and address the late disclosure of the information. Further, every witness who had testified was subject to recall.

*B. Analysis*

Under *Brady*, the prosecution has a duty to disclose material exculpatory evidence to the defense. (*Brady, supra*, 373 U.S. at p. 87; *People v. Superior Court* (*Johnson*) (2015) 61 Cal.4th 696, 709.)

5

" 'There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' [Citation.]" (*People v. Salazar* (2005) 35 Cal.4th 1031, 1043.) Prejudice "focuses on 'the materiality of the evidence to the issue of guilt or innocence.' " (*Ibid.*) When evidence is material, there is a reasonable probability that had it been disclosed, the result of the trial could have been different. (*People v. Jenkins* (2000) 22 Cal.4th 900, 954.) "A 'reasonable probability' of a different result" is one in which the suppressed evidence " 'undermines confidence in the outcome of the trial.' " (*Kyles v. Whitley* (1995) 514 U.S. 419, 434.)

On appeal, the defendant has the burden of establishing a *Brady* violation. (*People v. Jimenez* (2019) 32 Cal.App.5th 409, 418.) A reviewing court independently determines whether a *Brady* violation has occurred but accords great weight to the trial court's factual findings supported by substantial evidence. (*Ibid.*)

In a case of delayed discovery, as here, we, like the trial court, are guided by the California Supreme Court's decision in *Mora and Rangel*. There the court held that "[e]vidence actually presented at trial is not considered suppressed for *Brady* purposes," even if that evidence had not been previously disclosed. (*Mora and Rangel, supra*, 5 Cal.5th at p. 467; see also *People v. Verdugo* (2010) 50 Cal.4th 263, 281; *People v. Morrison* (2004) 34 Cal.4th 698, 715.) The court explained "that when considering whether delayed disclosure rather than 'total nondisclosure' constitutes a *Brady* violation, 'the applicable test is whether defense counsel was "prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case." ' [Citations.]" (*Mora and Rangel, supra*, 5 Cal.5th at p. 467; see also *U.S. v. Anderson* (9th Cir. 2004) 391 F.3d 970, 975 [no *Brady* violation from government's delay in identifying two witnesses where defense secured the witnesses and had opportunity to recall other witnesses who could have been impeached]; *U.S. v. Tyndall* (8th Cir. 2008)

521 F.3d 877, 882 ["A mid-trial disclosure violates *Brady* only if it comes too late for the defense to make use of it"].)

Defendant has failed to establish a *Brady* violation. The additional statements Dorn recalled defendant making were disclosed in time for defendant to make use of them, including in vigorous cross-examination highlighting the prosecution's less than compelling explanation for delayed disclosure of information helpful to the defense.

Specifically, in cross-examination, defense counsel again took Dorn through each of the statements that the prosecution had initially failed to disclose. Then counsel elicited testimony that Dorn had spoken to the prosecutor about these additional statements only four days before testifying at trial. Dorn confirmed that he had been sitting next to the prosecutor throughout the trial from opening statements through the testimony of all the other witnesses. Dorn conceded that not only were the additional statements defendant made not in his police report, neither was his questioning B.P. at the scene about whether she was suicidal. Dorn confirmed that he left out these statements simply because he forgot. Dorn admitted that previously he had testified incorrectly that there was complete silence during the 15-minute ride to the jail.

Thus, the defense was able to show the jury that a key witness for the prosecution was changing his story under oath and suggest that this witness had purposely delayed disclosure of evidence favorable to the defense. (See *U.S. v. Alvarez* (9th Cir. 1996) 86 F.3d 901, 905 [no *Brady* violation from prosecution's untimely production of police officer's rough notes reflecting discrepancies with his testimony, where defense eventually received the notes and cross-examined officer about discrepancies in his report].)

In addition, defendant's statements to Dorn also were seemingly known to defendant before Dorn disclosed them to the prosecutor or testified before the jury. "Although the prosecution may not withhold favorable and material evidence from the defense, neither does it have the duty to conduct the defendant's investigation for him.

7

[Citation.] If the material evidence is in a defendant's possession or is available to a defendant through the exercise of due diligence, then, at least as far as evidence is concerned, the defendant has all that is necessary to ensure a fair trial, even if the prosecution is not the source of the evidence. [Citations.] Accordingly, evidence is not suppressed unless the defendant was actually unaware of it and could not have discovered it ' "by the exercise of reasonable diligence." ' " (*People v. Salazar, supra*, 35 Cal.4th at pp. 1048-1049; see also *Raley v. Ylst* (9th Cir. 2006) 470 F.3d 792, 804 [" '[W]here the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence, the Government does not commit a *Brady* violation by not bringing the evidence to the attention of the defense' "].) In short, there is no evidence of suppression if the defendant was actually aware of the evidence. (See *People v. Morrison, supra*, 34 Cal.4th at p. 715; see also *U.S. v. Quintanilla* (10th Cir. 1999) 193 F.3d 1139, 1149 ["If a defendant already has a particular piece of evidence, the prosecution's disclosure of that evidence is considered cumulative, rendering the suppressed evidence immaterial"].)

We find *Fullwood v. Lee* (4th Cir. 2002) 290 F.3d 663 instructive. In *Fullwood*, the defendant was convicted and sentenced to death for the murder of his girlfriend. (*Id.* at pp. 671-673.) In a habeas corpus petition, he contended that the prosecution improperly withheld a statement he made to a detective shortly after his arrest that he had stabbed his girlfriend while under the influence of cocaine. (*Id.* at pp. 684-685.) He argued that this statement constituted *Brady* material because it supported a diminished capacity defense. (*Ibid.*) The appellate court concluded the defendant had failed to establish the second and third elements of a *Brady* claim, suppression and materiality. The statement was known to the defendant and the prosecutor's conduct did not prejudice his counsel's ability to present a defense of diminished capacity, since the defendant and his counsel were aware of the statement. (*Id.* at pp. 686-687.) Here, as in *Fullwood*, defendant's own statements to Dorn were known to defendant. Therefore, the

8

prosecution did not suppress material evidence. (See also *Hicks v. Collins* (6th Cir. 2004) 384 F.3d 204, 220-221 [statements made by defendant fall outside of *Brady*, because as defendant "uttered these statements, he knew whether he made them and could have advised his counsel accordingly"].)

Defendant acknowledges that he was aware of the statements made to Dorn, but argues he would have had to take the stand to present evidence of his statements expressing concern for B.P.'s welfare because Dorn had previously testified denying their existence. Not so. Dorn disclosed the existence of additional statements before he testified, which meant they could be and were presented through Dorn's testimony. Defendant further argues that he would have to accuse Dorn of lying, "clearly an uncomfortable, and likely unsuccessful trial strategy." We disagree. Dorn admitted in cross-examination that he had previously testified incorrectly that defendant made no other statements, which served to impeach his testimony on the subject, including his explanation that B.P. told him she was not suicidal, which he admitted was not in his police report. Finally, defendant contends the delayed disclosure deprived him of the opportunity to use Dorn's testimony about the additional statements as a " 'roadmap' " in his opening statement. This is an overstatement. Defense counsel presented the theory that B.P. was suicidal in the opening statement and Dorn's testimony that defendant had told him so supported that theory.[1]

We conclude there was no *Brady* violation.

---

[1] In opening statement, defense counsel told the jury: "On April 5, 2021, when David Fuentes got into B.P.'s car, he had no idea the difficult challenges he would face. He had no idea she was in a deranged state of mind, and he had no idea how that would lead to a chaotic encounter that would require him to take drastic actions, actions that may have prevented her from crashing her car with her two children inside."

## II

### *Unanimity Instruction*

Defendant contends that the trial court erred in failing to sua sponte instruct the jury that it had to agree unanimously on which act constituted false imprisonment, the bear hug outside B.P.'s car or the bear hug while B.P. was sitting on another car. We disagree.

### *A. Further Background*

Defendant was charged with one count of felony false imprisonment of B.P. occurring on April 5, 2021.

Dorn testified that B.P. told him that defendant grabbed her in a bear hug when they got out of her car and threw her to the ground. Then defendant picked her up and moved her to the top of another car where he held her in a bear hug. Defendant's father testified that he saw defendant "bear hugging" B.P. "leaning against my '64 Grand Prix."

In closing argument, on the charge of felony false imprisonment, the prosecutor argued that defendant "held B.P. against her will with her arms pinned at her side so she couldn't move. She couldn't get away from him, as she's screaming and yelling for him to let her go. [¶] And then, [he] moved her from the first car, when they arrived, over to the other car where he threw her on the hood and then continued to hold her there as she was screaming, as his mother ran out with a bat, trying to get him to stop, then [he] continued to hold her."

The trial court did not give CALCRIM No. 3500, which instructs the jury in relevant part: "The People have presented evidence of more than one act to prove that the defendant committed [the charged] offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed." (See also CALCRIM No. 3501.)

10

*B. Analysis*

"Under the California Constitution, a unanimous jury verdict is required to convict a person of a crime. [Citations.] In particular, the jury must agree unanimously that the defendant is guilty of *a specific crime.* [Citation.] [¶] When a defendant is charged with a criminal offense, but the evidence suggests *more than one discrete crime,* either the People must elect among the crimes or the trial court must instruct the jurors that they all agree on the same criminal act. [Citations.] [¶] The requirement for a unanimity instruction ' "is intended to eliminate the danger that the defendant will be convicted even though there is *no single offense* which all the jurors agree the defendant committed." ' [Citation.]" (*People v. Sorden* (2021) 65 Cal.App.5th 582, 615.) "Despite the foregoing, 'no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises "when the acts are so closely connected in time as to form part of one transaction." ' " (*Id.* at p. 616; see *People v. Hernandez* (2013) 217 Cal.App.4th 559, 572 ["[A] unanimity instruction is not ' "required when the acts alleged are so closely connected as to form part of one continuing transaction or course of criminal conduct," ' or ' " 'when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them' " ' "].)

"[W]hether the trial court should have given a particular jury instruction involves a mixed question of law and fact which is ' "predominantly legal," ' [thus,] we review de novo whether the specific instruction was required. [Citation.]" (*People v. Sorden, supra*, 65 Cal.App.5th at p. 616.)

Here, defendant's acts on April 5, 2021, relating to count 2 were committed in a continuing course of criminal conduct. " '[T]he essential element of false imprisonment is restraint of the person. Any exercise of express or implied force which compels another person to remain where he does not wish to remain, or to go where he does not wish to go, is false imprisonment. [Citation.]' [Citation.]" (*People v. Dominguez* (2010)

11

180 Cal.App.4th 1351, 1360.)  Both bear hugs were part of the same course of conduct in which defendant maintained forcible control over B.P.  (Cf. *People v. Ordonez* (1991) 226 Cal.App.3d 1207, 1231 [no unanimity instruction required for discrete segments of kidnapping offense because evidence showed that the "victim never regained his liberty" throughout the offense]; *People v. Thomas* (1994) 26 Cal.App.4th 1328, 1335 [the defendant committed one continuous kidnapping offense despite distinct segments of the crime where the threat that the armed defendant would injure or kill the victim "remained fairly constant throughout her ordeal"].)  Also, defendant offered the same defense to both bear hugs, i.e., that B.P. was suicidal and defendant was trying to keep her from harming herself or the children.  Further, while a unanimity instruction is necessary where the acts are "separated by time and space" (*People v. Hernandez, supra*, 217 Cal.App.4th at p. 574), there was no separation here because the acts occurred at the same place within seconds of each other.

We conclude the trial court did not err in failing to give a unanimity instruction on false imprisonment.

### DISPOSITION

The judgment is affirmed.

　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　EARL, J.

We concur:

　　/s/
ROBIE, Acting P. J.

　　/s/
HOCH, J.